1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

J. Jonathan Hawk (SBN 254350)
WHITE & CASE LLP
555 South Flower St. Suite 2700
Los Angeles, CA 90071-2433
Telephone: (213) 620-7741
jhawk@whitecase.com

Attorneys for X Corp., as successor in interest
to named defendant Twitter, Inc.

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WHITE COAT CAPTIONING, LLC; YES CONSULTING, LLC; CANCOMM LLC (DBA DIALOGUE INC.); AND DIALOGUE MÉXICO S.A. DE C.V., on behalf of themselves and all others similarly situated;<br><br>Plaintiffs,<br><br>v.<br><br>TWITTER, INC.<br><br>Defendant. | Case No. 3:23-cv-1594<br><br>**X CORP.'S NOTICE OF MOTION AND MOTION TO DISMISS CANCOMM LLC'S AND DIALOGUE MÉXICO S.A. de C.V.'S CLAIMS FOR FORUM NON CONVENIENS**<br><br>Hrg:      July 31, 2023<br>Time:     9:30 a.m.<br>Ctrm:    C – 15th Floor<br>Judge:    Honorable Sallie Kim |

1

## <u>NOTICE OF MOTION AND MOTION TO DISMISS</u>

2    TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD: PLEASE TAKE NOTICE

3   that on July 31, 2023 at 9:30 a.m., or as soon thereafter as this matter may be heard, in the United

4   States District Court for the Northern District of California, located at 450 Golden Gate Avenue,

5   San Francisco, CA 94102-4389, in Courtroom C – 15th Floor, before the Honorable Sallie Kim, X

6   Corp., as successor in interest to named defendant Twitter, Inc. ("**Twitter**"), will move the Court

7   for an order dismissing, with prejudice, all claims against Twitter by Cancomm LLC dba Dialogue

8   Inc. ("**Cancomm**") and Dialogue México S.A. de C.V. ("**Dialogue México**") under the doctrine

9   of *forum non conveniens* and *Atlantic Marine Construction Company v. United States District*

10  *Court for the Western District of Texas*, 571 U.S. 49 (2013).  Cancomm and Dialogue México

11  entered into a contract governing the provision of services at-issue in their Complaint, which

12  contract provides that any claims arising from the agreement shall be litigated exclusively in courts

13  in London, England.  Cancomm and Dialogue México thus cannot bring their claims in this Court,

14  and their claims should be dismissed with prejudice.

15    The Motion is based on this Notice of Motion and Motion to Dismiss Cancomm LLC's and

16  Dialogue México S.A. de C.V.'s Claims, the Memorandum of Points and Authorities, the

17  Declaration of Martin O'Neill, all other pleadings and papers on file in this action, any other such

18  matters upon which the Court may take judicial notice, the arguments of counsel, and any other

19  matter the Court may properly consider.

20

## <u>RELIEF SOUGHT</u>

21    Twitter seeks dismissal, with prejudice, of all of Cancomm LLC's and Dialogue México

22  S.A. de C.V.'s claims under the doctrine of *forum non conveniens* and *Atlantic Marine*

23  *Construction Company v. United States District Court for the Western District of Texas*, 571 U.S.

24  49 (2013).

25

26

27

28

- 1 -

1

## <u>TABLE OF CONTENTS</u>

2

A.      INTRODUCTION ............................................................................1

B.      STATEMENT OF ISSUE TO BE DECIDED ...................................1

C.      FACTUAL BACKGROUND..............................................................1

D.      ARGUMENT.....................................................................................5

       1.      Cancomm's and Dialogue México's Respective Claims Fall Within the Scope of Section 12.9 MSA's Forum Selection Clause .............................7

       2.      Enforcement of the Forum Selection Clause Results in Dismissal of This Action Under the Doctrine of Forum Non Conveniens..............................8

E.      CONCLUSION................................................................................10

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Aimsley Enters. Inc. v. Merryman*,
No. 19-cv-02101-YGR, 2020 U.S. Dist. LEXIS 60295 (N.D. Cal. Apr. 6, 2020)....................6

*Argueta v. Banco Mexicano, S.A.*,
87 F.3d 320 (9th Cir. 1996) ......................................................................................................8

*Atl. Marine Constr. Co. v. U.S. Dist. Ct.*,
571 U.S. 49 (2013).............................................................................................................1, 5, 9

*Batdorf v. Trans Union*,
No. 00-0501(CRB), 2000 U.S. Dist. LEXIS 6796 (N.D. Cal. May 8, 2000) ...........................4

*Becker v. U.S. Dist. Ct.*,
993 F.3d 731 (9th Cir. 2021) ....................................................................................................9

*Brady Mktg. Co., Inc. v. KAI USA, Ltd.*,
No. 16-cv-02854-RS, 2016 U.S. Dist. LEXIS 115877 (N.D. Cal. Aug. 29, 2016)...................2

*Cline v. Reetz-Laiolo*,
329 F. Supp. 3d 1000 (N.D. Cal. 2018) ....................................................................................4

*Finsa Portafolios, S.A. de C.V. v. Opengate Capital, LLC*,
769 F. App'x 429 (9th Cir. 2019) .........................................................................................5, 8

*Fraser v. Brightstar Franchising LLC*,
No. 16-cv-01966-JSC, 2016 U.S. Dist. LEXIS 107900 (N.D. Cal. Aug. 15, 2016) ...............9

*Krainski v. Nevada ex rel. Bd. of Regents of NV. System of Higher Educ.*,
616 F.3d 963 (9th Cir. 2010) ....................................................................................................6

*Lewis v. Liberty Mut. Ins. Co.*,
953 F.3d 1160 (9th Cir. 2020) ..................................................................................................7

*Nibirutech Ltd. v. Jang*,
75 F. Supp. 3d 1076 (N.D. Cal. 2014) ......................................................................................6

*M/S Bremen v. Zapata off-Shore Co.*,
407 U.S. 1, 15 (1972)................................................................................................................6

*Palantir Techs., Inc. v. Palantir.net, Inc.*,
No. C 10-04283 CRB, 2011 U.S. Dist. LEXIS 1700 (N.D. Cal. Jan. 7, 2011) ........................4

*Ponomarenko v. Shapiro*,
287 F. Supp. 3d 816 (N.D. Cal. 2018)..................................................................................6, 8

1

*Rang Dong Joint Stock Co. v. J.F. Hillebrand USA, Inc.*,
  603 F. Supp. 3d 885 (E.D. Cal. 2022) ...................................................................5, 8

2

3

*Rostami v. Hypernet Inc.*,
  No. 22-cv-01813-EJD, 2023 U.S. Dist. LEXIS 54320 (N.D. Cal. Mar. 29, 2023) ...............7, 9

4

*Salesforce.com, Inc. v. GEA, Inc.*,
  No. 19-cv-01710-JST, 2019 U.S. Dist. LEXIS 136745 (N.D. Cal. Aug. 13, 2019) .............5, 6

5

*Sun v. Advanced China Healthcare, Inc.*,
  901 F.3d 1081 (9th Cir. 2018) ...................................................................6, 9

6

7

*White Knight Yacht, LLC v. Certain Lloyds at Lloyd's London, et al.*,
  407 F. Supp. 3d 931 (S.D. Cal. 2019)............................................................8, 10

8

9

*Zhixun Samuel Sun v. Rickenbacker Collections*,
  No. 5:10-CV-1055 EJD, 2012 U.S. Dist. LEXIS 95429 (N.D. Cal. July 10, 2012) .................4

10

11

## FEDERAL RULES

Federal Rule of Civil Procedure 12(a)(4)(a)....................................................................4

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**A.     INTRODUCTION**

3      Plaintiffs Cancomm LLC, dba Dialogue Inc. ("**Cancomm**") and Dialogue México S.A de

4   C.V. ("**Dialogue México**") each assert a single breach of contract claim, alleging that Twitter, Inc.

5   failed to pay "Dialogue" for approximately $140,000 in services rendered under a Master Services

6   Agreement (the "**MSA**").  The Complaint admits that Cancomm and Dialogue México entered

7   into the MSA, but it fails to mention that Section 12.9 of the MSA contains a choice of venue

8   provision, providing that "[a]ny legal action or proceeding arising under this Agreement will be

9   brought <u>exclusively</u> in the courts of London, England" (emphasis added).  The MSA likewise

10  includes a choice of law provision, providing that any such dispute shall be governed by the laws

11  of England and Wales.

12      This Court is <u>not</u> the specified forum for this dispute. The parties' agreed-upon forum

13  selection clause should be enforced and the case dismissed for *forum non conveniens* pursuant to

14  *Atlantic Marine Construction Company v. United States District Court for the Western District of*

15  *Texas*, 571 U.S. 49 (2013).  Cancomm's and Dialogue México's claims should be heard

16  exclusively by courts in London, and those claims should be dismissed with prejudice here.

17      For these reasons, as set forth more fully below, X Corp., as successor in interest to named

18  defendant Twitter, Inc. ("**Twitter**"), respectfully requests that the Court dismiss Cancomm's and

19  Dialogue México's claims, without leave to amend.

20

**B.     STATEMENT OF ISSUE TO BE DECIDED**

21      Whether claims brought by Cancomm and Dialogue México should be dismissed under the

22  doctrine of *forum non conveniens* and *Atlantic Marine Construction Company v. United States*

23  *District Court for the Western District of Texas*, 571 U.S. 49 (2013), and its progeny.

24

**C.     FACTUAL BACKGROUND**

25      **1.     Relevant MSA and SOWs with Cancomm and Dialogue México**

26      Cancomm, as the "Supplier," entered into the MSA on May 1, 2018, with Twitter

27  International Company ("**Twitter International**"), an entity organized and existing under the laws

28

- 1 -

of Ireland.  Declaration of Martin O'Neill ("O'Neill Decl."), ¶ 5, Ex. 1 (MSA, pg. 1);[1] Compl., ¶ 35.  Twitter International entered into the MSA on its own behalf, as well as for the "benefit of its [Twitter International's] affiliates and subsidiaries."[2]

The MSA sets forth a general framework under which Cancomm will provide consulting services to Twitter International, its affiliates, and/or subsidiaries, and specifies that any specific consulting services project will require the parties thereto to enter into a "Statement of Work" ("**SOW**") that describes the project to be performed. Ex. 1 (MSA), at § 1 (definitions of "Services" and "Statement of Work") and § 2.1.  The MSA further provides that each Statement of Work "will be subject to the terms and conditions" set forth in the MSA. *Id.* at § 2.1; *see also* Compl., ¶ 36 (admitting in the context of particular SOW, "[t]he Statement of Work is governed by the terms and conditions in the Master Services Agreement").

Section 12.9 of the MSA contains a choice of law and choice of venue provision, specifying that, among other things, any dispute arising from the MSA will be brought "exclusively in the courts of London, England:"

> **12.9  Governing Law.**  Law.  This Agreement will be governed by and construed in accordance with the laws of England and Wales, excluding that body of law pertaining to conflict of laws.  <u>Any legal action or proceeding arising under this Agreement will be brought exclusively in the courts of London, England</u>, and the parties hereby irrevocably consent to the personal jurisdiction and venue therein.

Ex. 1 (MSA), at § 12.9 (emphasis added).

Cancomm thereafter entered into several SOWs with Twitter International Company

---

[1] The MSA and relevant SOWs can, in any event, be considered under the incorporation by reference doctrine.  The Complaint includes extensive allegations regarding the MSA and relevant SOWs, and premises its breach of contract claim for Cancomm and Dialogue México on those agreements.  That is sufficient, as the Ninth Circuit has extended the "incorporation by reference doctrine to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." *Brady Mktg. Co., Inc. v. KAI USA, Ltd.*, No. 16-cv-02854-RS, 2016 U.S. Dist. LEXIS 115877, at *2 n.1 (N.D. Cal. Aug. 29, 2016) (quoting *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005)).

[2] The Complaint alleges the MSA between Cancomm and Twitter International was entered into on May 1, 2017. Compl., ¶ 35.  Twitter is unable to locate any MSA with Cancomm with that 2017 date (O'Neill Decl. ¶ 10), and believes Cancomm's allegation is a typographical error, as the date of the MSA should be May 1, 2018.  The Complaint also alleges that Twitter México S.A. de C.V. entered into an MSA with Dialogue México on May 1, 2018.  Compl., ¶ 35.  Twitter is unable to locate any such MSA (O'Neill Decl. ¶ 11), and believes Dialogue México's allegation is simply incorrect and the relevant MSA is the one dated May 1, 2018 with Cancomm.

and/or its affiliates under the MSA.  *See*, *e.g.*, Compl., ¶ 36.  Relevant here based on the allegations in the Complaint, in November 2020 Cancomm and Twitter, Inc. entered into SOW #5, effective as of January 1, 2021 and scheduled to run for one year, for "Communication and Public Relation Services or Spanish Speaking Latam: Argentina, Chile, Columbia."  O'Neill Decl., ¶ 6, Ex. 2 (SOW #5).  The first page of SOW #5 provides that it is "entered into pursuant to the terms and conditions of that [MSA]."  *Id.* (SOW #5 at 1).  Section 6 further confirms that SOW #5 is governed by the terms in the MSA:

> **6. ACCEPTANCE**
> …
> FURTHER, EACH PARTY AGREES THAT, <u>ALONG WITH THE APPLICABLE MASTER SERVICES AGREEMENT, THIS STATEMENT OF WORK AND APPLICABLE CHANGE ORDERS ARE THE COMPLETE AND EXCLUSIVE STATEMENT OF THE AGREEMENT BETWEEN THE PARTIES RELATING TO THE SERVICES DESCRIBED HEREIN,</u> WHICH SUPERSEDES ALL PROPOSALS OR PRIOR AGREEMENTS, ORAL OR WRITTEN, AND ALL OTHER COMMUNICATIONS BETWEEN THE PARTIES RELATING TO THE SUBJECT MATTER HEREOF.

Ex. 2 (SOW #5), at § 6 (emphasis added).

In December 2021, SOW #5 was extended by written amendment between Cancomm and Twitter, Inc., to run through December 31, 2022.  O'Neill Decl., ¶ 7, Ex. 3 (Amendment #1 to SOW #5).  As with SOW #5, Amendment #1 states that it is "issued under and subject to all the terms and conditions of the [MSA]," and that "[a]ll other terms and conditions of the SOW and [MSA] shall remain in full force and effect."  *Id.* (Amendment #1 to SOW #5 at 1).

Cancomm in December 2020 entered into SOW #6 with Twitter México, S.A. de C.V. ("**Twitter México**"), for "Communication and Public Relations Services for México," that would become effective January 1, 2021 and was scheduled to end one year later.  O'Neill Decl., ¶ 8, Ex. 4 (SOW #6).  The first page of SOW #6 -- just as with SOW #5 -- provides that it is "entered into pursuant to the terms and conditions of that [MSA]," and contains the same Section 6 as quoted above regarding "Acceptance."  *Id.* (SOW #6 at 1).  SOW #6 was extended for one additional year by a written amendment that was executed on December 21, 2021, and provided the services period under SOW #6 would run until December 31, 2022.  O'Neill Decl., ¶ 9, Ex. 5 (Amendment #1 to

- 3 -

1   SOW #6).[3]

2       Importantly, Amendment #1 to SOW #6 provides that Dialogue México will provide the

3   services covered by that SOW.  O'Neill Decl., ¶ 9, Ex. 5 (Amendment #1 to SOW #6).  It specifies

4   that Dialogue México shall be referred to as the "Supplier" as that term is used in the MSA and

5   relevant SOW, and that Dialogue México "is only responsible for the, representations, warranties,

6   and other obligations, under this SOW (as well as under the [MSA] with respect to this SOW)."

7   *Id.*  That amendment goes on to specify that it is entered into and subject to the terms of the MSA,

8   and that "[a]ll other terms of the SOW and [MSA] shall remain in full force and effect."  *Id.*

9       **2.    Cancomm's and Dialogue México's Allegations Arise Under the MSA and**

10      **Relevant SOWs**

11      The Complaint alleges that Cancomm entered into the MSA with Twitter International

12  Company on May 1, 2017, and that Twitter México entered into a "Master Services Agreement"

13  with Dialogue México "on May 1, 2018."  Compl., ¶ 35  The Complaint further alleges that

14  Cancomm entered into a "written agreement," *i.e.*, SOW, with Twitter México "in December

15  2021" for "communication and public relation services for 2022," that is "governed by the terms

16  and conditions in the Master Services Agreement." *Id.* at ¶¶ 36-37.

17      The Complaint goes on to allege that "Dialogue," between November 3, 2022, and

18  December 23, 2022, sent Twitter invoices totaling $140,000 for work performed under the SOW

19  entered into "in December 2021" for "communications and public relation services for 2022," and

20  that Twitter "approved" those invoices but has not timely paid them.  *Id.* at ¶¶ 38-40.

21      On these bases, Cancomm and Dialogue México -- in disregard of the MSA's choice of

22  venue provision, providing that this dispute shall be heard exclusively in courts in London -- each

23  assert a single claim for breach of contract against Twitter, i.e., for purported non-payment of

24  invoices for work performed under either SOW #5 or SOW #6, as amended.[4]

25  _____

26  [3] The Complaint alleges that Cancomm "entered into a written agreement with Twitter México … for itself and the
benefit of its affiliates" in December 2021.  Compl., ¶ 36.  Based on the allegations and the declaration submitted
herewith, Twitter contends that Amendment #1 to SOW #6 is the relevant agreement.

27  [4][4] Twitter reserves the right to answer the remaining claims brought by Plaintiffs White Coat Captioning, LLC and
28  YES Consulting, LLC upon resolution of this motion, as this motion to dismiss extends Twitter's time to answer all
claims, not just those subject to the motion.  *See Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1024 n.12 (N.D. Cal.

- 4 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## D.   <u>ARGUMENT</u>

"[T]he appropriate way to enforce a forum selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*." *Atl. Marine*, 571 U.S. at 60; *see Finsa Portafolios, S.A. de C.V. v. Opengate Capital, LLC*, 769 F. App'x 429, 430 (9th Cir. 2019) (affirming dismissal for *forum non conveniens* where valid forum selection clause identified the courts of Reynosa, Tamaulipas, Mexico, as the proper forum for claims arising out of the at-issue agreements).  The party seeking to enforce the forum selection clause in connection with a motion to dismiss bears the burden of demonstrating the clause's inclusion in the contract.  *Rang Dong Joint Stock Co. v. J.F. Hillebrand USA, Inc.*, 603 F. Supp. 3d 885, 889 (E.D. Cal. 2022) (dismissal for *forum non conveniens* warranted where forum selection clause agreed by and clear to plaintiff).

Once that burden is met, courts must modify the balance of relevant factors under the *forum non conveniens* test in three ways, all of which place a heavy burden on a plaintiff to show that an exceptional circumstance exists that would justify refusing to apply the choice of forum clause. *Atl. Marine*, 571 U.S. at 63; *see generally Salesforce.com, Inc. v. GEA, Inc.*, No. 19-cv-01710-JST, 2019 U.S. Dist. LEXIS 136745, at *15 (N.D. Cal. Aug. 13, 2019).  As explained by Judge Tigar in 2019:

> First, courts give the plaintiff's choice of forum no weight, instead placing on the plaintiff 'the burden of establishing that transfer to the forum for which the parties bargained is unwarranted.'[5]  Second, courts must treat 'the private-interest factors' as 'weigh[ing] entirely in favor of the preselected forum.'  Finally, 'when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules -- a factor that in some circumstances may affect public-interest considerations.'  As a result of the first two factors,

---

2018) (noting that defendant reserved the right to respond to additional claims after the disposition of his partial motion to dismiss); *Zhixun Samuel Sun v. Rickenbacker Collections*, No. 5:10-CV-1055 EJD, 2012 U.S. Dist. LEXIS 95429, at *4 (N.D. Cal. July 10, 2012) (holding that Federal Rule of Civil Procedure 12(a)(4)(a) extending time to respond to a complaint where a Rule 12 motion is filed "also applies in circumstances where, as here, the defendant files a motion to dismiss that is only partially dispositive"); *Palantir Techs., Inc. v. Palantir.net, Inc.*, No. C 10-04283 CRB, 2011 U.S. Dist. LEXIS 1700, at *6 (N.D. Cal. Jan. 7, 2011) ("[t]he filing of a motion to dismiss the other causes of action enlarged the time for [the defendant] to respond to the entire complaint, including those causes of action it did not move to dismiss" (quoting *Batdorf. v. Trans Union*, No. 00-0501(CRB), 2000 U.S. Dist. LEXIS 6796, at *5 (N.D. Cal. May 8, 2000)).

[5] *See also Finsa Portafolios*, 769 F. App'x at 430 ("[w]here the parties have agreed to a 'valid forum-selection clause,' the clause is 'given controlling weight' in a *forum non conveniens* analysis 'in all but the most exceptional cases' and the plaintiff's choice of forum is given 'no weight'").

1

the *Atlantic Marine* Court explained, 'the practical result is that forum-selection clauses should control except in unusual cases.'

2

*Salesforce.com, Inc.*, 2019 U.S. Dist. LEXIS 136745, at * 15 (citations omitted).

3

4

5

6

7

8

9

10

11

12

13

14

15

Indeed, where a motion to dismiss is based on a forum selection clause -- as opposed to being based solely on the doctrine of *forum non conveniens -- Atlantic Marine* "holds that the court cannot consider the 'private interest' factors such as the plaintiff's choice of forum and the convenience of the parties and witnesses." *Nibirutech Ltd. v. Jang*, 75 F. Supp. 3d 1076, 1080 (N.D. Cal. 2014) (citations omitted). A forum selection clause is presumptively valid, and the party challenging it "bears a 'heavy burden of proof' and must 'clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching.'" *Ponomarenko v. Shapiro*, 287 F. Supp. 3d 816, 835 (N.D. Cal. 2018) (finding enforcement of forum selection clause proper where, even despite plaintiff's challenge to its effectiveness, defendant showed the relevant agreement contained an exclusive forum selection clause, plaintiff's claims fell within its provisions, and plaintiff failed to show that any public factors weighed against enforcement) (citing *M/S Bremen v. Zapata off-Shore Co.*, 407 U.S. 1, 15 (1972)).

16

17

18

19

20

21

22

23

Applying this law, the Ninth Circuit has stated that it will be a rare, "exceptional" case where circumstances may exist to justify not applying a forum selection clause. These circumstances include: (1) the forum selection clause's incorporation into the contract was the result of "fraud or overreaching;" (2) the selected forum is so "gravely difficult and inconvenient" that the complaining party will "for all practical purposes be deprived of its day in court;" or (3) "enforcement would contravene a strong public policy of the forum in which suit is brought." *Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1088 (9th Cir. 2018) (quoting *M/S Bremen*, 407 U.S. at 15, 18).

24

25

26

27

28

If the party seeking to avoid application of a valid forum selection clause cannot establish that such an exceptional circumstance exists, and if amendment would be futile, dismissal without leave to amend should be granted. *Krainski v. Nevada ex rel. Bd. of Regents of NV. System of Higher Educ.*, 616 F.3d 963, 972 (9th Cir. 2010). Because federal courts are unable to transfer cases to courts of a foreign country, where the forum selection clause dictates a foreign forum,

- 6 -

1    dismissal is the most appropriate path forward. *Aimsley Enters., Inc. v. Merryman*, No. 19-cv-

2    02101-YGR, 2020 U.S. Dist. LEXIS 60295, at *8 (N.D. Cal. Apr. 6, 2020); *see also Lewis v.*

3    *Liberty Mut. Ins. Co.*, 953 F.3d 1160, 1165 (9th Cir. 2020) (quoting *Atlantic Marine*, 571 U.S. at

4    60, as stating "the appropriate way to enforce a forum selection clause pointing to a state or foreign

5    forum is through the doctrine of *forum non conveniens*"); *Rostami v. Hypernet Inc.*, No. 22-cv-

6    01813-EJD, 2023 U.S. Dist. LEXIS 54320, at *6 (N.D. Cal. Mar. 29, 2023) (same).

7            **1.**     **Cancomm's and Dialogue México's Respective Claims Fall Within the Scope**

8                       **of Section 12.9 MSA's Forum Selection Clause**

9            The Complaint admits that Cancomm entered into the MSA and relevant SOWs discussed

10   above, and that Dialogue México likewise entered into the relevant contractual terms via

11   Amendment #1 to SOW #6.  Specifically, the Complaint:

12   • admits that Cancomm entered into the MSA with Twitter International (Compl., ¶ 35);

13   • admits that Cancomm entered into an SOW underlying the claim (*Id.* at ¶¶ 36-37);[6]

14   • admits that Dialogue México entered into an SOW underlying its claim for non-payment

15        (*Id.* at ¶¶ 36-40);

16   • admits that the relevant SOW is "governed by the terms and conditions in the Master

17        Services Agreement" (*Id.* at ¶ 36); and

18   • admits that Cancomm's and Dialogue México's breach of contract claims arise under the

19        MSA, as those claims are expressly premised on Twitter's alleged non-payment of

20        invoices for work allegedly performed under the relevant SOW (*Id.* at ¶¶ 35-40).

21          It follows that the forum selection provision in Section 12.9 of the MSA -- which is

22   applicable to claims "arising under" this agreement -- governs here.  Section 12.9 is contained in

23   the MSA, and expressly provides that, "any legal action or proceeding arising under this

24   Agreement will be brought <u>exclusively</u> in the courts of London, England, and the parties hereby

25   <u>irrevocably</u> consent to the personal jurisdiction and venue therein." Ex. 1 (MSA), at § 12.9

---

26   [6] It is unclear whether the basis for Cancomm's and Dialogue México's respective claims is SOW #5 or SOW #6

27   (both as amended).  Both amendments were entered into in December 2021.  O'Neill Decl., ¶¶ 7, 9, Exs. 3, 5.
     Nonetheless, that distinction does not matter for purposes here, as both contain the same relevant provisions,

28   specifying that they are governed by the terms of the MSA, including the forum selection clause providing that
     Cancomm's and Dialogue México's respective claims can be heard only in courts in London, England.

1   (emphasis added).   As above, Cancomm agreed to that when it signed the MSA, SOW #5,

2   Amendment #1 to SOW #5, and SOW #6.   Dialogue México agreed to it when it became the

3   "Supplier" under Amendment #1 to SOW #6, and agreed to abide by the relevant provisions in the

4   MSA that it is now suing under.

5        This showing by Twitter that there is a valid forum selection agreement in its MSA with

6   Cancomm and Dialogue México is the only showing that Twitter needs to make.   *See*, *e.g.*,

7   *Ponomarenko*, 287 F. Supp. 3d at 835.   The forum selection clause is presumptively valid.   And

8   *Atlantic Marine* applies such that the private interest factors weigh entirely in favor of the forum

9   selected by the parties, i.e., courts in London, and it is Cancomm's and Dialogue México's burden

10   (which they cannot carry) to demonstrate this is an exceptional case where transfer is unwarranted.

11        **2.   Enforcement of the Forum Selection Clause Results in Dismissal of This**

12             **Action Under the Doctrine of Forum Non Conveniens**

13        This is not an "exceptional case" where the forum selection clause in the at-issue agreement

14   should be disregarded.

15        First, The Complaint does not contest the MSA's validity.   The Complaint actually admits

16   the MSA is valid.   *See* Compl. ¶¶ 35-40; O'Neill Decl., Ex. 1.   There are no allegations that Section

17   12.9 or the MSA itself were the result of "fraud or overreaching."   *Sun¸* 901 F.3d at 1088.

18   Cancomm was aware of this forum selection clause, as it is included in the plain language of the

19   agreement, and Cancomm agreed to it.   *See Rang Dong*, 603 F. Supp. 3d at 893 (finding that a

20   forum selection clause was "reasonably communicated" to plaintiff and therefore enforceable).

21   The same is true for Dialogue México, which agreed to Amendment #1 of SOW #6, O'Neill Decl.,

22   Ex. 5, and agreed to be bound by the MSA and SOW.

23        Second, there is no reason to believe that London courts would "deprive" Cancomm of its

24   day in court.   *See Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 326 (9th Cir. 1996) (finding it

25   was not "gravely" dangerous for plaintiff to travel to Mexico to litigate); *Finsa Portafolios*, 769

26   Fed. App'x at 431 (finding plaintiff had not shown how litigating in Mexico would "deprive" it of

27   its day in court where it had not attempted to subject defendant to service of process).   The parties

28   here "consent[ed] to the personal jurisdiction and venue" of the courts of London, England, one of

1 the largest and most accessible cities in the world. *See generally White Knight Yacht, LLC v.*
2 *Certain Lloyds at Lloyd's London, et al.*, 407 F. Supp. 3d 931, 948-49 (S.D. Cal. 2019) (in
3 analyzing public interest factors, enforcing forum selection clause in favor of England and Wales,
4 including because the relevant agreement had a provision requiring the application of the laws of
5 England and Wales to any dispute). There is no reasonable basis to argue that Cancomm and
6 Dialogue México will be deprived of their rights if they are forced to abide by their contractually-
7 chosen venue.

8 　　Third, there is no reason to believe that an alleged breach of contract claim as asserted here,
9 pertaining to purported non-payment for services, would "contravene a strong public policy" in
10 California. Rather, California public policy favors enforcing a contract's forum selection clause.
11 *See Becker v. U.S. Dist. Ct.*, 993 F.3d 731, 733 (9th Cir. 2021) (affirming dismissal of claims based
12 on valid forum selection clause, and noting that forum selection clauses are "valid except in the
13 rarest cases"); *Fraser v. Brightstar Franchising LLC*, No. 16-cv-01966-JSC, 2016 U.S. Dist.
14 LEXIS 107900, at *16 (N.D. Cal. Aug. 15, 2016) (transferring case to forum listed in forum
15 selection clause because "'the interest of justice' is best served by giving effect to the parties'
16 bargain").

17 　　Furthermore, addressing the "public interests traditionally evaluated in a *forum non*
18 *conveniens* analysis, including the administrative difficulties flowing from court congestion, the
19 local interest in having a localized controversy decided at home; and the interest in having the trial
20 of a diversity case in a forum that is at home with the law," do not change this result. *Rostami*,
21 2023 U.S. Dist. LEXIS 54320, at *18. Public interest factors "will rarely defeat" a motion to
22 enforce a forum selection clause. *Atlantic Marine*, 571 U.S. at 64; *Sun*, 901 F.3d at 1088. The
23 first factor does not impact this analysis. The relative congestion of the courts in the Northern
24 District of California and the courts in London, England is not especially important, *Rostami*, 2023
25 U.S. Dist. LEXIS 54320, at *26, and it is likely that both forums are busy given population size.

26 　　The second factor also does not impact this analysis. Local interest in the litigation exists in
27 both California, where Twitter has its principal place of business, and in London, where Twitter
28 International (now Twitter International Unlimited Company) has its lawyers for UK matters and

- 9 -

1   where it contracts under English law, and is in any event, near Dublin where Twitter International,

2   has its principal place of business.

3          The third factor also weighs in favor of London.  The litigation would be "at home with the

4   law" in London, because the agreement at-issue has a choice of law provision that indicates that

5   the law of England and Wales governs.  *See* Ex. 1 (MSA), at Sec. 12.9; *see White Knight Yacht,*

6   *LLC*, 407 F. Supp. 3d at 948-49 (relevant agreement had a provision requiring the application of

7   the laws of England and Wales to any dispute).  To adjudicate this dispute, the parties' U.S. lawyers

8   would need to brief, and the Court would need to apply and interpret English law, which the courts

9   in London, England will be intimately more familiar with.  Enforcing the valid forum selection

10  clause is therefore appropriate.

11  **E.      CONCLUSION**

12         Cancomm and Dialogue México have brought their respective claims in contravention with

13  the plain terms of the MSA, and it would be futile to amend the Complaint.  The forum selection

14  clause is valid, and it must be enforced.  For these reasons, as set forth above, Twitter respectfully

15  requests that the Court dismiss Cancomm's and Dialogue México's claims for *forum non*

16  *conveniens*, without leave to amend.

17
                                             Respectfully submitted,
18
     Dated:    June 16, 2023                 WHITE & CASE LLP
19

20                                  By:    */s/ J. Jonathan Hawk*

21                                         J. Jonathan Hawk (SBN 254350)
                                           WHITE & CASE LLP
22                                         555 South Flower St. Suite 2700
                                           Los Angeles, CA 90071-2433
23                                         Telephone: (213) 620-7741
                                           jhawk@whitecase.com
24
                                           Attorneys for X Corp., successor in interest to
25                                         named defendant Twitter, Inc.

26

27

28
                                         - 10 -