1    J. Jonathan Hawk (SBN 254350)
     WHITE & CASE LLP
2    555 South Flower St. Suite 2700
     Los Angeles, CA 90071-2433
3    Telephone: (213) 620-7741
     jhawk@whitecase.com
4
5    Attorneys for X Corp., as successor in interest
     to named defendant Twitter, Inc.
6
7
8                  IN THE UNITED STATES DISTRICT COURT
9               FOR THE NORTHERN DISTRICT OF CALIFORNIA
10                        SAN FRANCISCO DIVISION
11   WHITE COAT CAPTIONING, LLC; YES        Case No. 3:23-cv-01594
     CONSULTING, LLC; CANCOMM LLC
12   (DBA DIALOGUE INC.); DIALOGUE         **X CORP.'S REPLY IN SUPPORT OF**
     MÉXICO S.A. DE C.V.; AUTUMN           **ITS MOTION TO STRIKE CLASS**
13   COMMUNICATIONS, INC.; AND             **ALLEGATIONS**
     BUSINESS TRAINING WORKS, INC., on
14   behalf of themselves and all others similarly   Hrg:       September 11, 2023
     situated;                            Time:      9:30 a.m.
15                                         Ctrm:      C – 15th Floor
                              Plaintiffs,  Judge:     Honorable Sallie Kim
16
17          v.
18   TWITTER, INC.
19                              Defendant.
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

**Page(s)**

A.    INTRODUCTION ........................................................................................1

B.    ARGUMENT ..............................................................................................2

    1.    The Proposed Class Definition Is An Impermissible Fail-Safe Class .................2

    2.    Ninth Circuit Precedent Permits The Court to Strike a Fail-Safe Class .............6

    3.    The Amended Complaint Fails to Address All of Rule 23's Requirements........7

C.    CONCLUSION............................................................................................8

1

## <u>TABLE OF AUTHORITIES</u>

2
<u>Page(s)</u>

3

FEDERAL CASES

4
*Brazil v. Dell Inc.*,
  585 F. Supp. 2d 1158 (N.D. Cal. 2008) .................................................................................3

5

6
*Dixon v. Monterey Fin. Servs., Inc.*,
  No. 15-cv-03298-MMC, 2016 U.S. Dist. LEXIS 82601 (N.D. Cal. Jun. 24, 2016) .............3, 7

7
*Goodrich v. Cross River Bank*,
  No. 21-09296, U.S. Dist. LEXIS 136739 (N.D. Cal. July 26, 2022) ...................................2, 7

8

9
*Greenfield v. Cross River Bank*,
  No. 21-cv-09296-MMC, 2023 U.S. Dist. LEXIS 8130 (N.D. Cal. Jan. 13, 2023) .......2, 3, 6, 7

10
*Heffelfinger v. Elec. Data Sys. Corp.*,
  No. CV 07-00101 MMM (Ex), U.S. Dist. LEXIS 5296 (C.D. Cal. Jan. 7, 2008), *aff'd in part,
  rev'd in part*, 492 F. App'x 710 (9th Cir. 2012) .......................................................................5

11

12

13
*Kamar v. Radio Shack Corp.*,
  254 F.R.D. 387 (C.D. Cal. Oct. 8, 2008) ..................................................................................4

14
*Kamar v. Radio Shack Corp.*,
  375 F. App'x 734 (9th Cir. 2010) .........................................................................................3, 4

15

16
*Olney v. Job.com, Inc.*,
  No. 1:12-cv-01724-LJO, 2013 U.S. Dist. LEXIS 141339 (E.D. Cal. Sept. 30, 2013).............3

17

18
*Rosales v. Fitflop USA, LLC*,
  882 F. Supp. 2d 1168 (S.D. Cal. 2012).....................................................................................7

19
*Salaiz v. eHealthInsurance Servs.*,
  No. 22-cv-04835-BLF, 2023 U.S. Dist. LEXIS 48742 (N.D. Cal. Mar. 22, 2023)..................7

20

21
*Stokes v. CitiMortgage, Inc.*,
  No. 14-00278, U.S. Dist. LEXIS 21641 (C.D. Cal. Jan. 16, 2015).........................................7

22

23
*Vizcaino v. United States Dist. Ct. for W.D. Wash.*,
  173 F.3d 713 (9th Cir. 1999) ...................................................................................................5

24
*Whittlestone, Inc. v. Handi-Craft Co.*,
  618 F.3d 970 (9th Cir. 2010) ...............................................................................................1, 6

25

26
*Young v. Std. Fire Ins. Co.*,
  No. 21-35777, 2023 U.S. App. LEXIS 18 (9th Cir. Jan. 3, 2023).......................................2, 7

27

28

- ii -

1

**FEDERAL RULES**

2

Fed. R. Civ. P. 23.........................................................................................1, 2, 7, 8

Fed. R. Civ. P. 12.........................................................................................1, 2, 6, 8

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1     **A.      INTRODUCTION**

2           The Motion shows that the Amended Complaint's[1] proposed class definition is an

3     impermissible fail-safe class.  The proposed class definition hinges on whether vendors and

4     contractors "have not received payment for goods or services provided under the terms of their

5     contracts."  Am. Compl. at 11 (emphasis added).  That does not and cannot narrow potential class

6     members without actually reviewing each individual contract and determining whether a particular

7     contractor received what they bargained for or not.  The class definition thus does not distinguish

8     those who may be entitled to damages for breach of contract from X Corp., from those who may

9     not.  Membership can only be determined after X Corp.'s liability to a particular vendor or

10    contractor is established, and thus the class allegations should be struck under Rule 12(f).

11          The Motion further shows that the Amended Complaint's allegations do not cover all of

12    Rule 23's elements. It does not, for example, contain allegations sufficiently addressing

13    numerosity, commonality, and adequacy.  This is another basis for striking the class allegations.

14          The Opposition's arguments against striking the class allegations are unavailing for several

15    reasons.  First, the proposed class definition is an impermissible fail-safe class.  Membership in

16    the proposed class hinges on first determining whether X Corp. breached its agreement with a

17    particular vendor or contractor.  The cases cited in the Opposition are inapposite, as they involve

18    proposed class definitions that could be deployed without making a determination as to which

19    potential class members may prevail on the merits and which would not.   The Amended

20    Complaint's proposed class definition stands in stark contrast, requiring the Court to first

21    determine liability, and only, as a second step, determine who can be in the proposed class.

22          Second, the Court can strike the class allegations under Rule 12(f) if it agrees that the

23    Amended Complaint proposes an impermissible fail-safe class.  The Opposition argues that Ninth

24    Circuit case law from 2010 provides a *per se* rule that a court cannot strike class allegations under

25    Rule 12(f). *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970 (9th Cir. 2010).  *Whittlestone* does

26    not stand for the broad proposition advanced in the Opposition.  It addressed a motion to strike a

27    claim for damages, not class allegations.  And just earlier this year, the Ninth Circuit affirmed a

28

---

[1] Capitalized terms not defined herein shall have the meanings assigned to them in X Corp.'s Motion to Strike.

decision striking class allegations (*Young v. Std. Fire Ins. Co*., No. 21-35777, 2023 U.S. App. LEXIS 18, at *4 (9th Cir. Jan. 3, 2023)), and district court cases issued since *Whittlestone*, including from within this District, have struck class allegations under Rule 12(f).  *See*, *e.g.*, *Goodrich v. Cross River Bank*, No. 21-09296, 2022 U.S. Dist. LEXIS 136739, at *2 (N.D. Cal. July 26, 2022) (recognizing proposed class would be an impermissible fail-safe class if it was limited by its terms to people who submitted "complete" applications but were told they were incomplete).  The Court can grant the relief requested in the Motion.

Finally, the Opposition argues that the Amended Complaint includes allegations that sufficiently cover each of Rule 23's elements.  That is incorrect, as the Amended Complaint contains only threadbare allegations on many elements that should be deemed insufficient even under liberal pleading standards.  As to numerosity, for example, the Amended Complaint alleges only that dozens of vendors and contractors have already sued X Corp. individually in other cases, and that Plaintiffs are purportedly aware of "even more" who remain unpaid.  Moreover, notwithstanding allegations in the prior complaint that the original four named Plaintiffs were "aware of other[s]" who may fall within the proposed class, they added only two more named Plaintiffs to the Amended Complaint.  Plaintiffs have offered nothing more than unadorned speculation that a numerous class may exist.  And their allegations of commonality and adequacy are even more threadbare.

For these reasons, as set forth more fully in the Motion and below, the Court should strike the class allegations under Rule 12(f).

**B.**   **ARGUMENT**

**1.**    **The Proposed Class Definition Is An Impermissible Fail-Safe Class**

Membership in the Amended Complaint's proposed class hinges on whether vendors and contractors "have not received payment for goods or services provided under the terms of their contracts."  Mot. at 5-7 (*Greenfield v. Cross River Bank*, No. 21-cv-09296-MMC, 2023 U.S. Dist. LEXIS 8130, at *12 (N.D. Cal. Jan. 13, 2023)).  The Motion shows that this proposal sets out an impermissible fail-safe class, as the Court would be required to first determine whether one of X Corp.'s vendors or contractors was actually wronged to establish whether that vendor or contractor

- 2 -

1    is in the proposed class.  Mot. at 5 (*Kamar v. Radio Shack Corp.*, 375 F. App'x 734, 736 (9th Cir.

2    2010); *Olney v. Job.com, Inc.*, No. 1:12-cv-01724-LJO-SKO, 2013 U.S. Dist. LEXIS 141339, at

3    *33 (E.D. Cal. Sept. 30, 2013)).

4         As the Ninth Circuit has stated in the context of fail-safe classes, "[t]hat is palpably unfair

5    to the defendant, and is also unmanageable -- for example, to whom should the class notice be

6    sent?"  *Kamar*, 375 F. App'x at 736; *see also Dixon v. Monterey Fin. Servs., Inc.*, No. 15-cv-

7    03298-MMC, 2016 U.S. Dist. LEXIS 82601, at *11 (N.D. Cal. Jun. 24, 2016) (granting motion to

8    strike fail-safe class allegations)*; Brazil v. Dell Inc.*, 585 F. Supp. 2d 1158, 1167 (N.D. Cal. 2008)

9    (same).

10        The Opposition argues that the proposed class definition is proper because it is not defined

11   "using subjective terms or language defined in, for example, a regulation or law that would assign

12   liability."  Opp. at 7.  That is not the standard of review, and the Opposition's argument is incorrect

13   in any event.

14        The proposed class may not include language that "limits membership to those who will

15   prevail."  *Greenfield*, 2023 U.S. Dist. LEXIS 8130, at *11.  Here, the phrase "have not received

16   payment … under the terms of their contracts" (Am. Compl. at 11), requires an individualized and

17   subjective legal conclusion as to which vendors / contractors X Corp. did not pay in accordance

18   with the terms of the agreement.  It requires the Court to first assess each contract's terms, each

19   invoice submitted under each of those agreements, and work performed to determine both amounts

20   properly owed and whether X Corp. failed to timely pay that vendor.  That extensive analysis

21   would need to be completed on a vendor-by-vendor basis <u>before</u> determining class membership,

22   as a vendor or contractor would drop out of the class if it were determined that X Corp. was not in

23   breach of the agreement by reason of nonpayment.  Put simply, asking whether X Corp. owes

24   money to a particular vendor or contractor under the terms of their contract is another way of

25   saying, "Did X Corp. breach that particular vendor's or contractor's contract?"

26        That the Opposition admits Plaintiffs cannot propose how to identify class members

27   without first determining the merits of each potential class member's claim reveals that it is an

28   impermissible fail-safe class.  While arguing that the proposed class can be "objectively

- 3 -

determined from the evidence" (Opp. at 7-8), the Opposition goes on to admit that it cannot be done without first determining liability. Taking the issue of class notice to illustrate, the Opposition acknowledges that under the current proposed class definition, notice would have to be sent to all "Twitter vendors and contractors who signed Statements of Work and/or entered into contracts for goods or services governed by Twitter's Master Services Agreement or Independent Contractor Agreement anywhere in the United States." Opp. at 9. Only then will "Plaintiffs notify these people that they are members of the class if they 'have not received payment for the goods or services provided under the terms of their contracts.'" *Id.* (emphasis added).

The Opposition further argues that case law demonstrates that the Amended Complaint's proposed class definition is not an impermissible fail-safe class. But those cases are not analogous.

The class certified by the District Court and approved by the Ninth Circuit in *Kamar* included:

> All California employees of defendant paid on an hourly basis as nonexempt employees for the period of March 2003 to the present who (a) were instructed to and attended a Saturday store meeting or district office meeting without receiving the full amount of mandated premium pay, or (b) worked a split shift schedule without receiving the full amount of mandated premium pay, or (c) fit into both (a) and (b).

375 F. App'x at 735. The question of liability went to whether or not Radio Shack was required to pay "mandated premium pay." *See Kamar v. Radio Shack Corp.*, 254 F.R.D. 387, 405 (C.D. Cal. Oct. 8, 2008). Nothing in the class definition required a "subjective" determination by the court, and the lower court explained at length that employees could be determined as members of the class based on Radio Shack's extensive employee timekeeping records. *Id.* at 395-396, 403.

As the Ninth Circuit in *Kamar* recognized, it could make a distinction using the term "mandated premium pay" to "narrow[] the class to employees within the reporting and split-shift classifications, without actually distinguishing between those who may and those who may not ultimately turn out to be entitled to premium pay." *Kamar*, 375 F. App'x at 736. That distinction cannot be made with the Amended Complaint's proposed class definition. It uses the phrase "have not received payment . . . under the terms of their contracts" (Am. Comp. at 11), and thus requires distinguishing vendors and contractors who may be entitled to payment on the basis that X Corp.

- 4 -

allegedly breached its agreement, from those who will not be so entitled.

The same is true for the class definition examined by the *Vizcaino* court.  In that case, the question of liability did not limit membership in the class.  The court stated that "[i]t is implicit in the definition of the class that its members are persons who <u>claim</u> to have been (or to be) common law employees who were denied ESPP benefits.  That under this definition ultimate success may turn on resolution of a disputed legal issue does not make it circular."  *Vizcaino v. United States Dist. Ct. for W.D. Wash.*, 173 F.3d 713, 722 (9th Cir. 1999).  The evidentiary record identified those employees who could "claim" to be common law employees in *Vizcaino*.  *Id.*

A decision that is more analogous to the proposed class definition here is *Heffelfinger v. Elec. Data Sys. Corp.*, No. CV 07-00101 MMM (Ex), 2008 U.S. Dist. LEXIS 5296 (C.D. Cal. Jan. 7, 2008), *aff'd in part, rev'd in part*, 492 F. App'x 710 (9th Cir. 2012).  There, the proposed class was defined as workers who were entitled to, but were not paid overtime.  *Id.* at *10.  The court recognized that, if it determined the defendant's workers were not entitled to overtime, the workers would not be class members.  *Id.*  That was held to be an impermissible fail-safe class.  *Id.*[2]  This -- just as the proposed class definition here -- would require the court to determine who was entitled to payment as a prerequisite to determining who is in the proposed class.

Plaintiffs have also not explained why they believe the evidentiary record here may allow the Court to identify class members without first deciding the merits of liability.  Plaintiffs may "anticipate discovery will show Twitter maintained a database listing all approved but unpaid invoices."  Opp. at 7.  But "unpaid invoices" do not demonstrate whether vendors "have not received payment . . . under the terms of their contracts."  Am. Compl. at 11.  The only way to demonstrate that is by reviewing the "terms" of the parties' "contract," establishing which goods and/or services were provided, and then evaluating the amounts billed on the unpaid invoices to

---

[2] The court's decision was issued in ruling on plaintiffs' motion for class certification.  The court, after finding the proposed class definition was an impermissible fail-safe class, nonetheless modified it and certified that class as modified, but only because plaintiffs' central claim was that <u>all</u> workers employed by the defendant were entitled to overtime.  Plaintiffs were <u>not</u> attempting to certify a class of only workers entitled to overtime, and the proposed class definition simply did not match the plaintiffs' theory.  *Id.* at *10-11. That stands in stark contrast to Plaintiffs' claim here, where Plaintiffs do intend to seek certification of only vendors and contractors with whom X Corp. has allegedly breached its agreement by way of nonpayment, <u>not</u> (as the plaintiffs in *Heffelfinger*) all vendors and contractors.

1    determine whether it was breached.

2         Finally, the Opposition fails to sufficiently distinguish X Corp.'s case law, in particular

3    *Greenfield,* 2023 U.S. Dist. LEXIS 8130.  The Opposition argues that decision is inapposite

4    because the proposed class definition used "subjective" terminology "defined in . . . a regulation

5    or law that would assign liability."  Opp. at 7.  But that is a distinction without difference, as the

6    issue in *Greenfield* was that the term "completed" required a legal conclusion that would establish

7    liability (*Greenfield*, 2023 U.S. Dist. LEXIS 8130, at *11), just as the proposed class definition's

8    phrase here, "have not received payment . . . under the terms of their contracts."

9         The Amended Complaint's proposed class definition is an impermissible fail-safe class

10   and, as explained below, should be struck.

11        **2.     Ninth Circuit Precedent Permits The Court to Strike a Fail-Safe Class**

12        The Motion cites case law, including from within this District, showing that the Court can

13   strike the Amended Complaint's class allegations under Rule 12(f).  Mot. at 5-7.  The Opposition

14   incorrectly argues against this, claiming Ninth Circuit case law *per se* prohibits the Court from

15   using Rule 12(f) for that purpose.  The Opposition is wrong.  The Court has discretion as to whether

16   it believes class allegations should be struck.

17        It is undisputed that there is "a split in this District as to whether a motion to strike class

18   action allegations may be entertained at the motion to dismiss stage."  Mot. at 4 (quoting *Salaiz v.*

19   *eHealthInsurance Servs.*, No. 22-cv-04835-BLF, 2023 U.S. Dist. LEXIS 48742, at *13 (N.D. Cal.

20   Mar. 22, 2023) (citing *Ogola v. Chevron Corp.*, No. 14-cv-173-SC, 2014 U.S. Dist. LEXIS

21   117397, at *2 (N.D. Cal. Aug. 21, 2014) (collecting cases))); *see* Opp. at 3 ("courts in this District

22   disagree on whether they 'may' even *consider* such motions").  The Opposition nonetheless takes

23   this point a step too far -- stating that "binding" Ninth Circuit precedent in *Whittlestone, Inc.*, 618

24   F.3d 970, does not allow Rule 12(f) motions to strike class allegations.  Opp. at 3.

25        *Whittlestone* addresses a motion to strike a claim for damages, not a motion to strike class

26   allegations.  *Id.*  It does not state the rule claimed by Plaintiffs, and as such is not "binding" here.

27   Other case law since *Whittlestone* supports X Corp. on this point.

28        In fact, the Ninth Circuit affirmed a decision to strike class allegations earlier this year.

- 6 -

1    *See Young v. Std. Fire Ins. Co*., No. 21-35777, 2023 U.S. App. LEXIS 18, at \*4 (9th Cir. Jan. 3,

2    2023) (affirming decision to strike class allegations).  And since *Whittlestone*, courts in this District

3    have also decided to strike class allegations.  This demonstrates that the Court may strike the class

4    allegations here, if it agrees the Amended Complaint proposes an impermissible fail-safe class.

5    *See Goodrich*, 2022 U.S. Dist. LEXIS 136739, at \*2; *Greenfield*, 2023 U.S. Dist. LEXIS 8130, at

6    \*12; *Dixon.*, 2016 U.S. Dist. LEXIS 82601, at \*11; *Stokes v. CitiMortgage, Inc.*, No. 14-00278,

7    U.S. Dist. LEXIS 21641, at \*11 (C.D. Cal. Jan. 16, 2015); *Salaiz*, 2023 U.S. Dist. LEXIS 48742,

8    at \*14.

9          **3.**       **The Amended Complaint Fails to Address All of Rule 23's Requirements**

10        The Amended Complaint does not "'address each of the elements of Rule 23,'" *see*

11    *Rosales v. Fitflop USA, LLC*, 882 F. Supp. 2d 1168, 1179 (S.D. Cal. 2012) (citation omitted), and

12    the Opposition's conclusory statements to the contrary do not show otherwise.

13        The Opposition states that the Amended Complaint meets this pleading standard in

14    paragraphs 59, 60, and 62.  Opp. at 5.  But as stated in the Motion, these allegations, at most,

15    claim "more than two dozen" other vendors have already sued X Corp. in other, individual

16    proceedings for purported breach of contract for not paying amounts claimed under those

17    vendors' agreements, and that Plaintiffs claim to know of some other, unidentified vendors who

18    have not brought such claims.  Mot. at 8.  But even accepting Plaintiffs' vague claim as true, that

19    <u>some</u> vendors may exist who would join the proposed class, the Amended Complaint fails to

20    plausibly allege that the proposed class is "<u>so numerous</u> that joinder of all members is

21    impracticable."  Fed. R. Civ. P. 23(a)(1) (emphasis added).

22        Moreover, the few paragraphs cited by Plaintiffs do not address all of Rule 23's

23    requirements**,** including:

24          •   that there "are questions of law or fact common to the [putative] class" (Fed. R. Civ.

25            P. 23(a)(2));

26          •   that Plaintiffs' claims or defenses would be typical of the "other" vendors' claims or

27            defenses (Fed. R. Civ. P. 23(a)(3)); and

28

1    • that Plaintiffs will "fairly and adequately protect the interests of the class" (Fed. R.

2    Civ. P. 23(a)(4)).

3    It is appropriate to strike the class allegations under Rule 12(f) because the elements of Rule

4    23 are not addressed.

5    **C.     CONCLUSION**

6    The Amended Complaint alleges an impermissible fail-safe class, and fails to address each

7    of Rule 23's elements.  For the reasons set forth above, X Corp. respectfully requests that the Court

8    strike Plaintiffs' class allegations from the Amended Complaint under Rule 12(f).

9

10                                          Respectfully submitted,

11   Dated:    August 4, 2023              WHITE & CASE LLP

12                              By:
                                           */s/ J. Jonathan Hawk*
13                                          J. Jonathan Hawk

14                                          Attorneys for X Corp., as successor in interest
15                                          to named defendant Twitter, Inc.

16

17

18

19

20

21

22

23

24

25

26

27

28

- 8 -