1  J. Jonathan Hawk (SBN 254350)
   WHITE & CASE LLP
2  555 South Flower St. Suite 2700
   Los Angeles, CA 90071-2433
3  Telephone: (213) 620-7741
   jhawk@whitecase.com
4
5  Attorneys for X Corp., as successor in interest
   to named defendant Twitter, Inc.

6

7

8              IN THE UNITED STATES DISTRICT COURT

9           FOR THE NORTHERN DISTRICT OF CALIFORNIA

               SAN FRANCISCO DIVISION
10

11 WHITE COAT CAPTIONING, LLC; YES          Case No. 3:23-cv-01594
   CONSULTING, LLC; CANCOMM LLC
12 (DBA DIALOGUE INC.); DIALOGUE            **X CORP.'S REPLY IN SUPPORT OF**
   MÉXICO S.A. DE C.V.; AUTUMN              **ITS MOTION TO DISMISS CANCOMM**
13 COMMUNICATIONS, INC.; AND                **LLC'S AND DIALOGUE MÉXICO S.A.**
   BUSINESS TRAINING WORKS, INC., on        **de C.V.'S CLAIMS FOR FORUM NON**
14 behalf of themselves and all others similarly **CONVENIENS**
   situated;
15                                           Hrg:      September 11, 2023
                         Plaintiffs,        Time:     9:30 a.m.
16                                           Ctrm:     C – 15th Floor
                                             Judge:    Honorable Sallie Kim
17      v.

18 TWITTER, INC.

19                       Defendant.

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page(s)**

A.    INTRODUCTION ........................................................................................................... 1

B.    ARGUMENT ................................................................................................................. 2

    1.    The May 1, 2018 MSA Submitted With The Motion Governs Here ................... 2

    2.    The MSA's Choice of Law and Choice of Venue Provisions Are Still
        Enforceable ......................................................................................................... 4

    3.    *Forum Non Conveniens* Factors Cannot Save Cancomm's and Dialogue
        México's Claims .................................................................................................. 6

C.    CONCLUSION .............................................................................................................. 8

1

## **TABLE OF AUTHORITIES**

2
**Page(s)**

3
### **FEDERAL CASES**

4 *Atl. Marine Construction Company v. United States District Court for the Western District of*
5   *Texas*, 571 U.S. 49 (2013) ......................................................................................................1, 6, 7

6 *Banner Entertainment, Inc. v. Superior Court,*
   62 Cal.App.4th 348 (1998)) ..........................................................................................................3

7 *Becker v. U.S. Dist. Ct.*,
8   993 F.3d 731 (9th Cir. 2021) ......................................................................................................10

9 *Bianchi v. B&G Mach., Inc.*,
   No. C18-1049RSL, 2018 U.S. Dist. LEXIS 154761 (W.D. Wash. Sept. 11, 2018) ...............5
10

11 *Denison Powerlifting v. Layne*,
   No. SACV 21-00193-CJC (DFMx), 2021 U.S. Dist. LEXIS 160116 (C.D. Cal. June 9, 2021)
12   ......................................................................................................................................................5

13 *Doe 1 v. AOL LLC*,
   552 F.3d 1077 (9th Cir. 2009) ....................................................................................................10
14

15 *Finsa Portafolios, S.A. de C.V. v. Opengate Capital, LLC*,
   769 F. App'x 429 (9th Cir. 2019) ................................................................................................7

16 *Fraser v. Brightstar Franchising LLC*,
17   No. 16-cv-01966-JSC, 2016 U.S. Dist. LEXIS 107900 (N.D. Cal. Aug. 15, 2016) ..............10

18 *Goodworth Holdings, Inc. v. Suh*,
   239 F. Supp. 2d 947 (N.D. Cal. 2002) ..........................................................................................3

19 *Jezign Licensing, LLC v. Bebe Stores, Inc.*,
20   No. 20-CV-1064 JLS (AGS), 2021 U.S. Dist. LEXIS 134166 (S.D. Cal. July 19, 2021) ........4

21 *Litton Fin. Printing Div. v. NLRB*,
   501 U.S. 190 (1991)......................................................................................................................4
22

23 *Marcotte v. Micros Sys.*,
   No. C 14-01372 LB, 2014 U.S. Dist. LEXIS 128054 (N.D. Cal. Sept. 11, 2014) ...................4

24 *Nibirutech Ltd. v. Jang*,
25   75 F. Supp. 3d 1076 (N.D. Cal. 2014) ......................................................................................6, 7

26 *Oestreicher v. Alienware Corp.*,
   502 F. Supp. 2d 1061 (N.D. Cal. 2007), *aff'd*, 322 F. App'x 489 (9th Cir. 2009) ...................8
27

28 *Pennington's, Inc. v. Brown-Forman Corp.*,
   No. 92-35243, 1993 U.S. App. LEXIS 20638 (9th Cir. Aug. 11, 1993) ...................................6

- ii -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Saleemi v. Gosh Enters.*,
 467 F. App'x 744 (9th Cir. 2012) ........................................................................................4

*Salesforce.com, Inc. v. GEA, Inc.*,
 No. 19-cv-01710-JST, 2019 U.S. Dist. LEXIS 136745 (N.D. Cal. Aug. 13, 2019) ............1, 6

*White Knight Yacht, LLC v. Certain Lloyds at Lloyd's London, et al.*,
 407 F. Supp. 3d 931 (S.D. Cal. 2019) ................................................................................7

1

## A.    INTRODUCTION

2     X Corp.'s Motion to Dismiss shows that Cancomm and Dialogue México agreed in the

3 MSA[1] to litigate their claims exclusively in courts in London, under the laws of England and

4 Wales.   That agreement must be enforced and Cancomm's and Dialogue México's claims

5 dismissed without leave to amend under *Atl. Marine Construction Company v. United States*

6 *District Court for the Western District of Texas*, 571 U.S. 49 (2013).

7     The Opposition asserts a host of arguments in efforts to stave off dismissal, but does not

8 and cannot carry Cancomm's and Dialogue México's burden to demonstrate this is an exceptional

9 case that would justify refusing to apply the choice of venue provision.  *Atl. Marine*, 571 U.S. at

10 63; *see generally Salesforce.com, Inc. v. GEA, Inc.*, No. 19-cv-01710-JST, 2019 U.S. Dist. LEXIS

11 136745, at *15-16 (N.D. Cal. Aug. 13, 2019).

12     The Opposition first attempts to create confusion, claiming that X Corp., Cancomm, and

13 Dialogue México "entered into" other agreements with different choice of venue provisions,

14 including an unsigned and incomplete "Master Services Agreement."  X Corp. has no record of

15 that document, and Cancomm's and Dialogue México's own Managing Partner makes no mention

16 of it in her declaration.  That document is not and never was a valid, binding agreement.  And even

17 the Opposition admits that Cancomm and Dialogue México are bound by the MSA, as they

18 performed the work at-issue in this litigation under the MSA and associated SOWs.  The "Master

19 Services Agreement" and "Purchase Orders" mentioned in the Opposition are irrelevant and

20 cannot change what is shown in the Motion.

21     The Opposition also argues that the MSA's choice of venue provision cannot be enforced

22 because it did not survive Cancomm's and Dialogue México's alleged termination of the MSA.

23 The MSA was never terminated because Cancomm and Dialogue México never gave written

24 notice and an opportunity to cure as the MSA requires.  In any event, case law in this Circuit is

25 clear that a choice of venue provision presumptively survives termination of an agreement even if

26 it is not mentioned in the agreement's "Survival" clause.

27     Finally, the Opposition argues that the *forum non conveniens* factors favor keeping

28

---

[1] Capitalized terms not defined herein shall have the meanings assigned to them in X Corp.'s Motion to Dismiss.

Cancomm's and Dialogue México's claims in this Court.  The Opposition's argument rests largely on private interest factors set out in *Atlantic Marine* and its progeny that cannot properly be considered here, where there is a choice of venue agreement between the parties.  The Opposition also incorrectly argues that public policy supports denying X Corp.'s motion, but it cites only inapposite cases in support (including dealing with class waivers), and would have this Court ignore California's strong public policy in favor of recognizing choice of venue provisions.

The Motion shows that Cancomm's and Dialogue México's claims should be dismissed without leave to amend, and the Opposition does not change anything.  The Motion should be granted.

**B.    ARGUMENT**

**1.    The May 1, 2018 MSA Submitted With The Motion Governs Here**

The Motion shows that Cancomm and Dialogue México are bound by the terms of the MSA, dated May 1, 2018.  Mot. at 2-4 (citing O'Neill Decl., Dkt. 15, ¶ 5, Ex. 1 (Dkt. 15-1, MSA), ¶ 6, Ex. 2 (Dkt. 15-2, SOW #5), ¶ 7, Ex. 3 (Dkt. 15-3, Amendment #1 to SOW #5), ¶ 8,  Ex. 4 (Dkt. 15-4, SOW #6), and ¶ 9, Ex. 5 (Dkt. 15-5, Amendment #1 to SOW #6)).  The MSA includes the choice of law and choice of venue provision that governs in this case, and requires Cancomm and Dialogue México to litigate their disputes with X Corp. in courts in London, under the laws of England and Wales.  *Id.*

The Opposition admits that Cancomm and Dialogue México entered into the MSA to provide services internationally, including in Mexico, Chile, Columbia, and Argentina, and admits that Cancomm and Dialogue México are bound by the MSA.  Opp. at 2-3 (citing the O'Neill Decl., Ex. 1 (MSA), Ex. 3 (Amendment #1 to SOW #5), and Ex. 5 (Amendment #1 to SOW #6).  The Opposition nonetheless cites a number of other documents that are irrelevant, and are seemingly offered to cause confusion.  *See* Farrell Decl. Exs. A-E.  They have no bearing on X Corp.'s Motion to Dismiss.

The Opposition mentions a different alleged "Master Services Agreement," dated May 1, 2018, purportedly between Twitter México and Dialogue México, with a provision stating that any disputes arising thereunder must be heard in courts in Mexico City, under the laws of Mexico.

- 2 -

1  Opp. at 2-3 (Farrell Decl., Ex. A).  X Corp. has no record of that document (Mot. at 2, fn. 3 (O'Neill
2  Decl., Dkt. 15, ¶ 11), and all materials before the Court indicate it is <u>not</u> a valid, binding agreement.

3  The document is not signed by any party, there are numerous blank fields throughout the
4  document that would have been filled in had it been finalized (*e.g.*, Farrell Decl., Ex. A at 1), and
5  there is no admissible evidence that Twitter México and Dialogue México ever entered into such
6  an alleged contract.  *See Goodworth Holdings, Inc. v. Suh*, 239 F. Supp. 2d 947, 958 (N.D. Cal.
7  2002) ("[w]hen it is clear that both parties contemplate that acceptance of a contract's terms would
8  be signified in writing, the failure to sign the agreement means that no binding contract is created."
9  (citing *Banner Entertainment, Inc. v. Superior Court*, 62 Cal.App.4th 348, 358 (1998))).  The
10  declaration from Cancomm's and Dialogue México's Managing Partner, Naomi Newton, does not
11  mention that document at all, let alone claim the parties entered into it as a purported agreement.
12  Farrell Decl., Ex. F.  The Opposition merely states, in conclusory fashion, that Twitter México and
13  Dialogue México "entered into" that alleged "Master Services Agreement."  Opp. at 2.

14  That is not admissible evidence,[2] and it even runs contrary to admissions in the Opposition.
15  The Opposition's alleged "Master Services Agreement" between Twitter México and Dialogue
16  México contemplates that any work performed by the parties would be undertaken pursuant to
17  Statements of Work entered into under that alleged document ("[i]t desires to have Supplier
18  perform the services provided on the applicable Statement of Work, subject to the terms and
19  conditions of this Agreement").  Farrell Decl., Ex. A at 1.  But the Opposition does not argue that
20  any such Statements of Work exist.  Rather, the Opposition admits that Cancomm's and Dialogue
21  México's claims in this litigation relate to "public relations and communications services
22  throughout Mexico, Chile, Colombia, and Argentina for all of 2022."  Opp. at 2.  The Opposition
23  goes on to admit that those services were (purportedly) performed pursuant to Amendment #1 to
24  SOW #5 and Amendment #1 to SOW #6, and that both of those agreements are "governed by the
25  terms and conditions in [the] MSA" discussed in the Motion.  Opp. at 3.

26
27  [2] Cancomm's and Dialogue México's counsel has submitted a declaration, stating that Twitter México and Dialogue México "entered into" that alleged agreement.  There is no factual basis in that declaration or elsewhere that would establish that counsel has the requisite personal knowledge to declare to that, particularly when Cancomm's and Dialogue México's Managing Partner has failed to do so.
28

- 3 -

The "Master Services Agreement" discussed in the Opposition is a red herring.  It is not a valid and binding agreement, and there is no evidence that any work at-issue in this litigation was undertaken pursuant to it.

The Purchase Orders discussed in the Opposition are likewise inapplicable.  The declaration from Cancomm's and Dialogue México's Managing Partner fails to mention those Purchase Orders or specify which agreement they relate to.  And in any event, the Purchase Orders expressly provide that the terms of the "Agreement" will govern in the event of a conflict.  The MSA defines itself as the "Agreement" (O'Neill Decl., Ex. 1 (MSA)), that is the only "Agreement" in evidence before the Court, and its choice of law and choice of venue provision govern here, requiring this dispute be heard in courts in London, under the laws of England and Wales.[3]

## 2.    The MSA's Choice of Law and Choice of Venue Provisions Are Still Enforceable

The Opposition seeks to avoid the MSA's choice of law and choice of venue provision by arguing that the MSA was terminated, and that the choice of law and choice of venue provision is thus no longer enforceable.  Opp. at 5-7.  That argument fails for two reasons.

First, and even assuming *arguendo* that the MSA was properly terminated (which it was not), the Opposition's argument is contrary to settled law in this Circuit.  Courts in this Circuit have consistently found that a forum selection clause presumptively survives termination of a contract even without a "Survival" clause specifying as much.  *See Saleemi v. Gosh Enters.*, 467 F. App'x 744, 744 (9th Cir. 2012) (citing *Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 204 (1991)) (referring to forum selection clause as "background obligations governing dispute resolution" that survive termination); *Marcotte v. Micros Sys.*, No. C 14-01372 LB, 2014 U.S. Dist. LEXIS 128054, at *29-30 (N.D. Cal. Sept. 11, 2014) ("the case law supports the conclusion that dispute resolution  provisions survive the termination of a contract"); *Jezign Licensing, LLC v. Bebe Stores, Inc.*, No. 20-CV-1064 JLS (AGS), 2021 U.S. Dist. LEXIS 134166, at *9 (S.D. Cal.

---

[3] Even if the choice of law and choice of venue provisions in the "Master Services Agreement" were properly considered (which they are not for reasons discussed herein), X Corp.'s arguments for dismiss would apply with full force, albeit in favor of this dispute being heard in courts in Mexico City, under the laws of Mexico.  Either way, Cancomm's and Dialogue México's claims cannot be heard in this Court.

July 19, 2021) ("contract must 'explicitly indicate[]' that a forum-selection clause is designed to terminate with the rest of the agreement; otherwise, the 'forum selection clause survives termination of the contract'" (quoting *Zaitzeff v. Peregrine Fin. Grp., Inc.*, 2008 U.S. Dist. LEXIS 130974, *22 (C.D. Cal. June 23, 2008)); *Denison Powerlifting v. Layne*, No. SACV 21-00193-CJC (DFMx), 2021 U.S. Dist. LEXIS 160116, *6 (C.D. Cal. June 9, 2021) (forum selection clauses survive termination "even when a contractual list of clauses that survive termination does not include the dispute resolution provisions"); *Bianchi v. B&G Mach., Inc.*, No. C18-1049RSL, 2018 U.S. Dist. LEXIS 154761, at *8 (W.D. Wash. Sept. 11, 2018) (stating that the survival clause at issue "covers 'obligations contained in Section 8 and 9' does not impliedly limit the forum-selection clause from applying to a later dispute otherwise within the clause's scope.").

Nothing in the MSA changes this, and the MSA's provisions provide support for the notion that the choice of law and choice of venue provision survives any alleged termination:

> The parties agree that those obligations that by their nature should survive either expiration or termination of this Agreement, shall survive in favor of Twitter, including obligations set out in Clauses 5, 6, 8 and 10 of this Agreement, as well as any obligation of Supplier in regards to the protection and privacy of personal data.

*See also Denison Powerlifting*, 2021 U.S. Dist. LEXIS 160116, at *6 (forum selection clauses survive termination "even when a contractual list of clauses that survive termination does not include the dispute resolution provisions"); *Bianchi*, 2018 U.S. Dist. LEXIS 154761, at *8 (finding forum selection clause survived even where survival provision did not enumerate forum selection clause).

Second, the MSA has not been terminated.  Section 9.2 of the MSA requires that, to terminate, the non-breaching party must first provide written notice and a 10-day cure period:

> Either party may terminate this Agreement (including all Statements of Work) if the other party breaches any material term of this Agreement and fails to cure such breach (if amenable to cure) within ten (10) days following written notice thereof from the non-breaching party.

There is no evidence that Cancomm and/or Dialogue México provided written notice or a cure period in accordance with Section 9.2 of the MSA.

1     The Opposition argues that notice to terminate was provided when the Complaint was filed

2   in this action.  Opp. at 5.  But that would subvert the meaning of and intent behind the MSA's

3   notice provisions, and there is no evidence supporting the Opposition's contention.

4     Courts routinely enforce the plain terms of mutual termination provisions, *Pennington's,*

5   *Inc. v. Brown-Forman Corp.*, No. 92-35243, 1993 U.S. App. LEXIS 20638, at \*5-6 (9th Cir. Aug.

6   11, 1993) (collecting cases), and there is no reason to deviate from that general rule here.  The

7   MSA's choice of law and choice of venue provision are valid and enforceable, and there is no basis

8   for Cancomm and Dialogue México to claim they are "void."

9     **3.**     ***Forum Non Conveniens* Factors Cannot Save Cancomm's and Dialogue**

10          **México's Claims**

11     The Motion shows that Cancomm's and Dialogue México's claims are properly dismissed,

12   without leave to amend, under the doctrine of *forum non conveniens* as applied in *Atlantic Marine*.

13   Mot. at 5-10.  There is a choice of law and choice of venue provision in the MSA, pointing to a

14   foreign state (England), and the MSA is a valid and binding agreement.

15     As such, the burden shifts to Cancomm and Dialogue México to show in their Opposition

16   why dismissal is not warranted.  The Court's analysis must also modify the balance of relevant

17   factors under the *forum non conveniens* test in three ways, all of which place a heavy burden on

18   Cancomm and Dialogue México to show that an exceptional circumstance exists that would justify

19   refusing to apply the choice of forum clause.  *Atl. Marine*, 571 U.S. at 63; *see generally*

20   *Salesforce.com, Inc. v. GEA, Inc.*, No. 19-cv-01710-JST, 2019 U.S. Dist. LEXIS 136745, at \*15-

21   16 (N.D. Cal. Aug. 13, 2019).  This includes that, under *Atlantic Marine*, "the court cannot consider

22   the 'private interest' factors such as the . . . convenience of the parties and witnesses." *Nibirutech*

23   *Ltd. v. Jang*, 75 F. Supp. 3d 1076, 1080 (N.D. Cal. 2014) (citations omitted) (emphasis added).

24     Cancomm and Dialogue México have not, and cannot, carry their burden for three reasons.

25     First, the Opposition argues that litigating in London is so "gravely difficult and

26   inconvenient" that Cancomm and Dialogue México would be "deprived of its day in court."  Opp.

27   at 7-8.  But most considerations raised in the Opposition are private interest factors, i.e., the

28   location of the parties and the cost to them of litigating in the UK.  Those cannot be properly

- 6 -

1  considered -- "where the parties have agreed to a forum-selection clause, they 'waive the right to

2  challenge the preselected forum as inconvenient or less convenient for themselves or their

3  witnesses, or for their pursuit of the litigation.'" *Sun*, 901 F.3d at 1091 (quoting *Atl. Marine*, 571

4  U.S. at 64); *see also Jang*, 75 F. Supp. 3d at 1080.

5       Cancomm and Dialogue México are business entities that contracted with a large

6  technology company to provide services on an international basis.  If they had concerns about

7  being required to litigate in a foreign country, they should not have agreed to do that.

8       Moreover, litigants are not deprived of their day in court simply because they must abide

9  by agreements to litigate in foreign countries.  Courts have even recognized that litigants are not

10  deprived of their day in court if they are required to abide by their contractual obligations to litigate

11  in Mexico or England.  *See Finsa Portafolios, S.A. de C.V. v. Opengate Capital, LLC*, 769 F. App'x

12  429, 430 (9th Cir. 2019) (finding plaintiff had not shown how litigating in Mexico would "deprive"

13  it of its day in court under a *forum non conveniens* analysis where it had not attempted to subject

14  defendant to service of process in the proposed forum); *White Knight Yacht, LLC v. Certain Lloyds*

15  *at Lloyd's London, et al.*, 407 F. Supp. 3d 931, 948-49 (S.D. Cal. 2019) (enforcing forum selection

16  clause in favor of England and Wales, including because the plaintiff did not show that it would

17  be "deprived" of its day in court where it made conclusory statements regarding financial burden

18  and did not contest the adequacy of the chosen forum).  The Opposition offers nothing to show

19  otherwise.

20       Second, the Opposition argues that public interest factors support denial of X Corp.'s

21  Motion.  That is incorrect, particularly as *Atlantic Marine* has recognized that public interest

22  factors "will rarely defeat" a motion to enforce a forum selection clause.  *See Atlantic Marine*, 571

23  U.S. at 64; *Sun*, 901 F.3d at 1088.  As the Motion makes clear, three public interest factors favor

24  enforcing the forum selection clause here: (i) court congestion, (ii) local interest in controversy,

25  and (iii) whether the forum is "at home with the law."  Mot. at 10.

26       The Opposition purports to weigh those factors to argue that they favor denial of X Corp.'s

27  Motion.  The Opposition nonetheless fails to account for the undisputed choice of law and choice

28  of venue provision in the MSA.  It also does not show how those factors favor keeping Cancomm's

- 7 -

1  and Dialogue México's claims in this Court.  The Opposition merely argues that keeping

2  Cancomm and Dialogue México as parties would not result in any additional burden on judicial

3  resources, the facts allegedly happened in San Francisco, and this Court could apply English law.

4        Including Cancomm and Dialogue México as plaintiffs in this case has already resulted in

5  additional burden on judicial and party resources via two rounds of motions to dismiss and to strike

6  class allegations, and that their claims are governed by English law will almost certainly result in

7  the expenditure of additional efforts that may not be otherwise needed.  And while this Court may

8  be able to comfortably apply English law, there can be no reasonable dispute that an English court

9  sitting in London would be more comfortable doing so.  These factors favor X Corp., or, at the

10  very least, cannot defeat the strong presumption under *Atlantic Marine* that a valid forum selection

11  clause must be enforced.

12        Third, the Opposition argues that the MSA's choice of venue provision can be disregarded

13  based on California public policy.  The Opposition is again incorrect, and its case law inapposite.

14  *See*, *e.g.*, Opp. at 9 (citing *Oestreicher v. Alienware Corp.*, 502 F. Supp. 2d 1061, 1066 (N.D. Cal.

15  2007), *aff'd*, 322 F. App'x 489 (9th Cir. 2009) (finding arbitration provision including a class

16  waiver unconscionable).  Enforcing Cancomm's and Dialogue México's choice of venue provision

17  does not "prevent the vindication of established rights on a class basis;" other plaintiffs who did

18  not agree to litigate in another country can attempt to vindicate alleged rights on a purported class

19  basis here.  Opp. at 9 (citing *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1083 (9th Cir. 2009) (addressing

20  claims under California consumer protection law)).  Finding otherwise would disregard established

21  case law, the parties' contractual rights and obligations under the circumstances here, and

22  California's public policy that favors enforcing a contract's forum selection clause.  *See* Mot. at 9-

23  10 (citing *Becker v. U.S. Dist. Ct.*, 993 F.3d 731, 733 (9th Cir. 2021); *Fraser v. Brightstar*

24  *Franchising LLC*, No. 16-cv-01966-JSC, 2016 U.S. Dist. LEXIS 107900, at *16 (N.D. Cal. Aug.

25  15, 2016)).

26  **C.**    <u>**CONCLUSION**</u>

27        For the reasons set forth above and in the Motion, X Corp. respectfully requests that the

28  Court enforce the MSA's valid choice of venue clause, and dismiss Cancomm's and Dialogue

- 8 -

1    México's claims for *forum non conveniens*, without leave to amend.

2

3                                            Respectfully submitted,

4    Dated:    August 4, 2023               WHITE & CASE LLP

5                              By:
                                            */s/ J. Jonathan Hawk*
6                                            J. Jonathan Hawk

7                                           Attorneys for X Corp., successor in
                                            interest to named defendant Twitter, Inc.
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28