UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WHITE COAT CAPTIONING, LLC, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>TWITTER, INC.,<br><br>Defendant. | Case No. 23-cv-01594-SK<br><br>**ORDER REGARDING MOTION TO DISMISS**<br><br>Regarding Docket No. 22 |

This matter comes before the Court regarding the motion by Twitter, Inc. ("Defendant") to dismiss two plaintiffs, Cancomm LLC and Dialogue México S.A. de C.V., based on the doctrine of *forum non conveniens*. (Dkt. No. 22.) After full briefing, this Court held a hearing on September 11, 2023. (Dkt. No. 32.) Having carefully considered the parties' papers, relevant legal authority, the record in the case, and having had the benefit of oral argument, the Court hereby GRANTS Defendant's motion to dismiss the claim raised by Cancomm LLC and DENIES WITHOUT PREJUDICE the motion to dismiss the claim brought by Dialogue México S.A. de C.V.

## BACKGROUND

Plaintiffs White Coat Captioning, LLC, YES Consulting, LLC, Cancomm LLC, Dialogue México S.A. de C.V., Autumn Communications, Inc., and Business Training Works, Inc. filed this class action lawsuit on April 4, 2023, asserting one claim for breach of contract. (Dkt. No. 1.) The operative complaint is the First Amended Complaint. (Dkt. No. 17.)

### A. Master Services Agreement between Cancomm LLC and Twitter International Company

Plaintiff Cancomm LLC ("Cancomm") entered into a Master Service Agreement on September 27, 2018, with Twitter International Company. (Dkt. No. 1 at ¶ 35; Dkt. No. 15-1 at

17.) Cancomm and Defendant agree that the Master Service Agreement for Cancomm contained a section stating that any disputes involving the Master Service Agreement would be resolved in courts of law in England. (Dkt. No. 22 at 2; Dkt. No. 24 at 2.) The Master Service Agreement states that "[a]ny legal action or proceeding arising under this Agreement will be brought exclusively in the courts of London, England, and the parties hereby irrevocably consent to the personal jurisdiction and venue therein." (Dkt. No. 15-1 (Decl. of Martin O'Neill, Ex. 1 at ¶ 12.9).) The Master Service Agreement also states that any disputes are "governed by and construed in accordance with the laws of England and Wales, excluding that body of law pertaining to conflict of laws." (*Id.*)

### B. Documents Governing Relationship with Dialogue México S.A. de C.V.

There is confusion about the existence of an agreement between Dialogue México S.A. de C.V. and Defendant. Part of the confusion is that there are several entities with similar names that are mentioned in the documents the parties submitted for this motion. (Dkt. Nos. 15-1-15-5, 25-1-25-3.) For example, there are three Twitter entities mentioned in those many documents: (1) Twitter, Inc., (2) Twitter International Company, and (3) Twitter México S.A. de C.V.[1] It is unclear what the relationship is between the three Twitter entities. On the other side, there are two entities: (1) Cancomm LLC (dba Dialogue, Inc.) and (2) Dialogue México S.A. de C.V., which is identified an "affiliate" of Cancomm LLC in one document. (Dkt. No. 15-4.) Heightening the confusion is the fact that Cancomm operates as "dba Dialogue, Inc." – a name similar to Dialogue México S.A. de C.V. Thus, it is unclear when documents refer to "Dialogue," whether those documents are referring to Cancomm or a shorthand way of referring to Dialogue México S.A. de C.V.

#### 1. Allegations of First Amended Complaint

The First Amended Complaint alleges that "Twitter International Company, for itself and the benefit of its affiliates and subsidiaries, entered into a written Master Services Agreement with Cancomm LLC on May 1, 2017." (Dkt. No. 17 at ¶ 39.) Therefore, the parties agree that the

---

[1] And to make matters even more confusing, Twitter, Inc. changed its name to X Corp., but for purposes of this motion, the Court will ignore that change.

Master Services Agreement dated May 1, 2018, between Cancomm and Twitter International Company applies to the relationship between Defendant and Cancomm. For purposes of this motion, the Court will refer to this Master Service Agreement as the "Master Service Agreement."

It is not clear which contract governs the relationship between Defendant and Dialogue México S.A. de C.V. The First Amended Complaint alleges: "Twitter Mexico S.A. de C.V., for itself and the benefit of its affiliates and subsidiaries, entered into a written Master Services Agreement with Dialogue Mexico SA de CV on May 1, 2018." (*Id.*) Thus, it appears that there might be another Master Service Agreement between Twitter México S.A., de C.V. and Dialogue México SA de CV., also dated May 1, 2018. For purposes of this motion, the Court will refer to this Master Service Agreement as the "second Master Service Agreement."

The First Amended Complaint also alleges that, in "December 2021, Dialogue entered into a written contract with Twitter Mexico, S.A. de C.V., an affiliate of Twitter International Unlimited Company, for itself and the benefit of its affiliates. The Statement of Work is governed by the terms and conditions in the Master Services Agreement." (Dkt. No. 17 at ¶ 40.) It is not clear whether the reference in this contract is to the Master Service Agreement or the second Master Service Agreement.

**2. Proof of Second Master Service Agreement**

Dialogue México S.A. de C.V. provides a copy of a document titled "Master Services Agreement" between Dialogue México S.A. de C.V. and Twitter México S.A., de C.V., also dated May 1, 2018, but it is unsigned. (Dkt. No. 25-1.) This appears to be the second Master Service Agreement noted above. The second Master Service Agreement states that disputed are governed under the law is Mexico and that the choice of forum is Mexico. (Dkt. No. 25-1.) The declarant who proposes to verify the second Master Service Agreement is Plaintiffs' counsel and not an employee or principal of Dialogue México S.A. de C.V. or Cancomm. (Dkt. No. 25 (Declaration of Jane Farrell).) Strangely, Naomi Newton, Managing Partner of Cancomm LLC (dba Dialogue Inc.) and Dialogue México S.A. de C.V., provides an affidavit discussing other issues for this motion, but she does not authenticate or explain the second Master Service Agreement. (Dkt. No. 25-6.)

3

### 3. Lack of Proof of Second Master Services Agreement

In contrast, Defendant provides a declaration from Defendant's employee that he was unable to find a Master Services Agreement dated May 1, 2018, between Twitter México S.A. de C.V. and Dialogue México S.A. de C.V. (Dkt. No. 15 (Declaration of Martin O'Neill) at ¶ 11.) Defendant argues that there is no second Master Service Agreement and that the Master Service Agreement binds **both** Cancomm and Dialogue México S.A. de C.V. In support of its argument that there is only one binding Master Service Agreement governing this dispute, Defendant points to two Statements of Work between Twitter México S.A. de C.V. and Dialogue México S.A. de C.V. dated December 17, 2020, and December 2, 2021. (Dkt. Nos. 15-4, 15-5.) The Statement of Work from December 17, 2020, (SOW #6), states that Dialogue México S.A. de C.V. is an affiliate of Cancomm and will provide services as set forth in the Statement of Work. (Dkt. No. 15-4.) Specifically, the December 17, 2020 Statement of Work ("SOW") reads:

> Twitter further agrees that Supplier [Dialogue México] assumes, and is only responsible for the representations, warranties and other obligations, under this SOW (as well as under the Agreement with respect to this SOW) and not any obligations specific to Cancomm LLC or any other affiliates providing services to Twitter under any other SOW.

(Dkt. No. 15-4.) The December 17, 2020 Statement of Work contains no choice of forum provision. (*Id*.) The December 17, 2020 Statement of Work refers to a Master Service Agreement between Cancomm and "Twitter México, S.A. de C.V. having its principal place of business at . . . México TME140912TB9" signed on May 1, 2018. (Dkt. No. 15-4.) There is no evidence of such a third Master Service Agreement between Cancomm and Twitter México, S.A. de C.V.

Another document, Amendment #1 to SOW #6, dated December 2, 2021 (Dkt. No. 15-5) also states that Dialogue México S.A. de C.V.is bound by the Master Service Agreement dated May 1, 2018. (Dkt. No. 15-5) Amendment #1 to Statement of Work #6, entered into between Cancomm LLC and Twitter México, S.A. de C.V., lists Dialogue México, S.A. de C.V. as the supplier, and it is dated December 2, 2021 and "executed" on December 21, 2021. (*Id*.) This document also contains no choice of forum. (*Id*.) This document states:

4

> This Amendment is issued under and subject to all the terms and conditions of the Master Services Agreement (the "Agreement") dated as of 1st May, 2018, by and between Twitter México, S.A. de C.V., an affiliate of Twitter International Unlimited Company, for itself and the benefit of its affiliates, with its principal place of business at Periferico Sur 4338, Col. Jardines del Pedregal San Angel, Mexico City, 04500, México ("Twitter") and CanComm LLC (dba Dialogue Inc.) with it's [sic] principal place of business at 801 Brickell Key Blvd. -Suite 2803, Zip Code 33131.

(*Id*.)  Again, there is no fourth Master Service Agreement between Twitter México, S.A. de C.V. and Cancomm.

### 4. Purchase Order Dated December 17, 2021

Dialogue México S.A. de C.V. points to another document, a purchase order, potentially governing its relationship with Defendant, and this purchase order4 requires litigation in California under California law.  (Dkt. No. 25-2.)

### 5. Purchase Order Dated September 2, 2022

Dialogue México S.A. de C.V. points to another document, another purchase order, potentially governing its relationship with Defendant, and this purchase order requires litigation in Mexico under Mexican law.  (Dkt. No. 25-3.)

### C. Failure to Pay

Beginning around November 3, 2022, Defendant stopped making payments to Cancomm and Dialogue México S.A. de C.V., and Defendant owes them $100,000 and $40,000, respectively.  (Dkt. No. 1 at 39; Dkt. No. 24 at 4-5.)  Cancomm and Dialogue México S.A. de C.V. allege that the Master Services Agreement was terminated and that they properly sent notice of termination by sending the Complaint to Defendant.  (Opp. at 5.)

## ANALYSIS

Defendant seeks to dismiss the claims brought by Cancomm and Dialogue México S.A. de C.V. under the doctrine of *forum non conveniens*, based on the choice of forum selection clause in the Master Services Agreement.  "The doctrine of *forum non conveniens* allows a court to dismiss a case properly before it when litigation would be more convenient in a foreign forum." *Cooper v. Tokyo Elec. Power Co., Inc.*, 860 F.3d 1193, 1210 (9th Cir. 2017).  A party may enforce a forum selection clause by moving to dismiss under the doctrine of *forum non conveniens*.  *Atl. Marine*

5

1  *Constr. Co. v. U.S. Dist. Ct.*, 571 U.S. 49, 60 (2013).

2  The Master Services Agreement states that "[a]ny legal action or proceeding arising under this Agreement will be brought exclusively in the courts of London, England, and the parties hereby irrevocably consent to the personal jurisdiction and venue therein." (Dkt. No. 15-1 at ¶ 12.9.) Cancomm and Dialogue México S.A. de C.V. argue that the Master Services Agreement is not binding because they terminated it. They also argue that, even if the forum selection clause is binding, the Court should deny the motion to dismiss because public interest factors favor litigation in this Court and because they will be denied their day in court because they cannot litigate in England. For the reasons stated herein, the Court finds that there is insufficient evidence to show that the Master Services Agreement controls disputes between Defendant and Dialogue México. However, the Court finds that, although the Master Services Agreement was terminated, the forum selection clause remains alive and applies to this dispute between Defendant and Cancomm. Furthermore, the Court finds that the public interest factors allow for enforcement of the forum selection clause. For the reasons set forth below, the Court GRANTS the motion to dismiss claims by Cancomm but DENIES WITHOUT PREJUDICE the motion to dismiss the claims brought by Dialogue México S.A. de C.V.

### A.  Claims by Dialogue México S.A. de C.V.

As noted above, there is confusion about whether the Master Services Agreement applies both to Cancomm and Dialogue México S.A. de C.V. There are competing documents containing forum selection clauses for different jurisdictions, and Defendant has not met its burden to show that the Master Services Agreement (which requires litigation in England under English law) applies to disputes between Defendant and Dialogue México S.A. de C.V. Defendant as the moving party has the burden to show that the forum selection clause exists. *See Kedkad v. Microsoft Corp., Inc.*, No. C13-0141-TEH, 2013 WL 4734022, at *3 n.3 (N.D. Cal. Sept. 3, 2013) ("It stands to reason, however, that the party seeking to enforce the forum selection clause must prove that it is what it purports to be."); *Rang Dong Joint Stock Co. v. J.F. Hillebrand USA*, Inc., 603 F. Supp. 3d 885, 889 (E.D. Cal. 2022). Here, Defendant does not meet that burden. Defendant may renew this motion as to Dialogue México S.A. de C.V. if Defendant can show that

6

the terms of the Master Services Agreement apply to Dialogue México S.A. de C.V.

### B. Termination of the Master Services Agreement and Survival of the Forum Selection Clause

Cancomm argues that it terminated the Master Services Agreement and thus that the forum selection clause was also terminated. The Master Services Agreement contains a clause stating that either party may "terminate this Agreement (including all Statements of Work) if the other party breaches any material term of this Agreement and fails to cure such breach . . . within ten (10) days following written notice thereof from the non-breaching party." (Dkt. No. 15-1.) Cancomm argues, and Defendant does not truly dispute, that Cancomm terminated the Master Services Agreement.[2] Cancomm argues that it provided such notice and terminated the Master Services Agreement when it filed the original Complaint, which alleges breach of contract, and Defendant did not cure. However, even if Cancomm terminated the Master Services Agreement, the forum selection clause survives.

The Master Services Agreement contains a survival clause which is silent regarding the forum selection clause after termination. Defendant argues that, unless otherwise stated, a forum selection clause survives termination of a contract. Case law supports this proposition that a forum selection clause survives termination of the contract, even if the survival clause does not specifically mention the forum selection clause. *Marcotte v. Micros Sys., Inc.*, 2014 WL 4477349, at *9-10 (N.D. Cal. Sept. 11, 2014) (citations omitted). Accordingly, the forum selection clause remains valid.

### C. Removal to England

Cancomm then argues that the Court should not enforce the forum selection clause because it will be deprived of its day in court and because public policy favors litigation in California. When "the parties' contract contains a valid forum-selection clause," a plaintiff has the burden, as the party opposing the forum-selection clause, to establish that transfer is unwarranted. *Atl. Marine*, 571 U.S. at 63. The Court must consider two factors: (1) whether the lawsuit falls within

---

[2] Defendant makes one passing reference to the fact that the MSA was not terminated, but Defendant provides not further evidence or legal argument on this issue. (Dkt. No. 27, p. 4.)

the scope of the forum-selection clause, and if it does, (2) whether the clause is valid and enforceable. *Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1086-87 (9th Cir. 2018) (citing *Atl. Marine*, 571 U.S. at 60). The Court should give the forum selection clause "controlling weight in all but the most exceptional cases." *Atl. Marine*, 571 U.S. at 63. The Court "must enforce a forum-selection clause unless the contractually selected forum affords the plaintiffs no remedies whatsoever." *Yei A. Sun.*, 901 F.3d at 1092. Because the forum selection clause remains valid, despite the termination of the Master Services Agreement, and because Cancomm does not dispute that the suit falls within the scope of the forum selection clause, the Court must enforce the forum selection clause unless Cancomm can show that "enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching.'" *Ponomarenko v. Shapiro*, 287 F. Supp. 3d 816, 835 (N.D. Cal. 2018) (noting that a forum selection clause is presumptively valid and that the party challenging it "bears a 'heavy burden of proof'" on those issues over unjust enforcement or fraud). A court must consider the existence of an adequate alternative forum and balance the private and public interest factors. *Nibirutech Ltd. v. Jung*, 75 F. Supp. 3d 1076, 1079-80 (N.D. Cal. 2014) (internal citations omitted).

An "exceptional reason" or "extraordinary circumstances" for not giving controlling weight to a forum-selection clause exists if the plaintiff makes a strong showing that: (1) the clause is invalid due to "fraud or overreaching," (2) "enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision, or (3) trial in the contractual forum will be so gravely difficult and inconvenient that [the litigant] will for all practical purposes be deprived of his day in court." *Yei A. Sun*, 901 F.3d at 1088 (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15, 18 (1972)).

Cancomm argues that the second two factors apply in this case: that public policy weighs in favor of maintaining this action here because this case is a putative class action that public policy of California favors and that Cancomm would not be able to litigate this matter as a class action if forced to litigate in England.

With regard to the argument about public policy, Cancomm cites to California Code of

8

1    Civil Procedure § 382 that provides in relevant part: "When the question is one of a common or
2    general interest, of many persons, or when the parties are numerous, and it is impracticable to
3    bring them all before the court, or one or more may sue or defend for the benefit of all."
4    Cancomm argues that it should be able to maintain this class action under California's stated
5    policy, and it cannot maintain a class action in England.  Under Cancomm's theory, any case that
6    is a putative class action would automatically be exempt from a forum selection clause.  That is
7    not the law.  Here, the statute cited merely states that there is a mechanism for parties to sue in
8    class actions.  The statute does not state that there is such a strong public policy in allowing a class
9    action to proceed that it overcomes other policies.  And here, the public policy of allowing class
10   actions does not override the strong public policy recognized by the courts in the enforcement of
11   forum selection clauses.  *See*, *e.g*., *Lee v. Fisher*, 70 F.4th 1129 (9th Cir. 2023) (antiwaiver
12   provision of federal securities law did not provide public policy strong enough to overcome forum
13   selection clause).  Furthermore, the case here is only a putative class action.  Six plaintiffs each
14   sue Defendant for breach of contract, and it appears that at least five of the contracts at issue are
15   separate.  Except for Cancomm and Dialogue México, the disputes are unrelated.  Given that this
16   action is a putative class action for which there is no clear explanation for their inclusion as a class
17   action, the public policy behind allowing class actions is even weaker.
18          Cancomm argues that this Court should retain jurisdiction because it would be cheaper and
19   efficient to litigate her and because Cancomm lacks resources to litigate in England.  Cancomm
20   claims that Defendant's headquarters are located in San Francisco, that most of the witnesses in
21   this action, including Elon Musk, are located in the United States, and that paying for transport to
22   England would create additional cost burdens for Plaintiffs that would make litigation gravely
23   difficult.  "To determine whether to dismiss under the *forum non conveniens*, the plaintiff's choice
24   of forum merits no weight and the Court should only consider the public interest factors." *Lee*,
25   2021 WL 1659842, at *3 (citing *Atl. Marine*, 571 U.S. at 64).  Private interest factors include the
26   plaintiff's choice of forum, the residence of witnesses and parties, and cost of transporting
27   witnesses.  *Nibirutech*, 75 F. Supp. 3d at 1079-80 (citing *Boston Telecom. Group, Inc. v. Wood*,
28   588 F.3d 1201, 1206-07 (9th Cir. 2009).  Thus, the factors that Cancomm cites are not ones that

the Court can consider in determining this issue.

Cancomm also argues that this Court should retain this case because this Court is familiar with the laws involved. Courts can consider public interest factors, which include "court congestion; imposition of jury duty on the people of a community unrelated to the litigation; the local interest in resolving the controversy at home; the interest in having a diversity case tried in a forum familiar with the law that governs the action; and the avoidance of unnecessary conflicts of law problems." *Gemini Capital Group v. Yap Fishing Corp.,* 150 F.3d 1088, 1094 (9th Cir. 1998). Here, however, the controlling law is the law of England, and the Court is not familiar with that law. There is no evidence about the congestion of this Court as compared to courts in England and whether the case in England will require a jury. Cancomm argues that this District has an interest in resolving disputes that arise between citizens of this District and other entities, but that interest seems to exist in any dispute in which a defendant is sued in its home district. Cancomm can point to no specific reason that this District has an interest in resolving a standard case for breach of contract. Given these factors, the Court finds that the third prong does not weigh in favor of ignoring the forum selection clause.

Cancomm cannot meet its burden to overcome the strong policy in favor of honoring a forum selection clause.

## CONCLUSION

For the reasons set for the above, the Court GRANTS the motion to dismiss the claim by Plaintiff Cancomm LLC but DENIES WITHOUT PREJUDICE the motion to dismiss the claim by Plaintiff Dialogue México S.A. de C.V.

**IT IS SO ORDERED**.

Dated: October 10, 2023

_____
SALLIE KIM
United States Magistrate Judge