J. Jonathan Hawk (SBN 254350)
jhawk@mwe.com
**McDERMOTT WILL & EMERY LLP**
2049 Century Park East, Suite 3200
Los Angeles, CA  90067-3206
Telephone:      1 310 277 4110
Facsimile:      1 310 277 4730

Attorneys for Second Named Defendant
X CORP., Successor In Interest to First Named
Defendant, Twitter, Inc.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WHITE COAT CAPTIONING, LLC, YES CONSULTING, LLC, AUTUMN COMMUNICATIONS, INC., BUSINESS TRAINING WORKS, INC., MEASURING USABILITY LLC, AND FOSTER & FORGE LTD. on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>X CORP. (FORMERLY KNOWN AS TWITTER, INC.)<br><br>Defendant. | CASE NO.  3:23-cv-01594-SK<br><br>**ANSWER TO SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

*McDermott Will & Emery LLP*
*Attorneys At Law*
*Los Angeles*

Defendant X Corp. ("X Corp."), hereby answers the Second Amended Class Action Complaint ("SAC") filed by plaintiffs White Coat Captioning, LLC ("White Coat"), YES Consulting, LLC ("YES"), Autumn Communications, Inc. ("Autumn Communications"), Business Training Works, Inc. ("Business Training"), Measuring Usability LLC ("Measuring Usability"), and Foster & Forge Ltd. ("Foster & Forge," with the other named plaintiffs, collectively "Plaintiffs"). X Corp. denies any allegation not expressly and unequivocally admitted.

## I.   INTRODUCTION

1.      X Corp. admits that Plaintiffs filed the SAC in their individual capacities as well as on behalf of a purported class, alleging a claim for breach of contract against X Corp. X Corp. further admits that it is successor in interest to Twitter, Inc. X Corp. denies that any class can be certified in this proceeding. X Corp. denies all remaining allegations, whether express or implied, in paragraph 1 of the SAC.

2.      Paragraph 2 of the SAC contains Plaintiffs' characterizations of personnel matters and post-acquisition operations at X Corp., and does not set forth a claim for relief or aver facts in support of a claim to which a response is required. To the extent that a response is required, X Corp. admits that it has experienced reductions in force and resignations in its workforce since the time the acquisition was concluded on or about October 27, 2022. X Corp. further admits that it is working with some vendors and landlords to review existing contracts, and that it is a party to various litigations involving breach of contract claims. X Corp. denies all remaining allegations, whether express or implied, in paragraph 2 of the SAC.

3.      Paragraph 3 of the SAC contains Plaintiffs' characterizations of post-acquisition operations at X Corp., and does not set forth a claim for relief or aver facts in support of a claim to which a response is required. To the extent that a response is required, X Corp. admits that the Business Insider article cited by Plaintiffs in paragraph 3 of the SAC states that, according to a separate report in the Financial Times, "Elon Musk has repeatedly said 'let them sue,' as unpaid bills for Twitter's vendors have piled up since his takeover." X Corp. denies all remaining allegations, whether express or implied, in paragraph 3 of the SAC.

4.      X Corp. admits that it is a party to an "Independent Contractor Agreement" with

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

McDermott Will & Emery LLP
Attorneys at Law
Los Angeles

White Coat, dated July 28, 2019 (the "White Coat ICA") and a Statement of Work No. 3 thereunder, dated March 3, 2022 (the "White Coat SOW No. 3").  X Corp. states that the allegations in paragraph 4 of the SAC refer to the White Coat ICA and SOW No. 3, which speak for themselves, and X Corp. refers to those documents for a complete description of their contents.  X Corp. admits that the White Coat SOW No. 3 provides that White Coat was retained to provide real-time captioning services, that, "Services and/or Deliverables will be approved in writing by Twitter ('Acceptance')" (Sec. 4), and that "[a]ll time sheets must be approved by Twitter personnel prior to payment" (Sec. 5).  X Corp. admits that White Coat alleges it is owed approximately $42,000 under the White Coat ICA and SOW No. 3, but X Corp. denies that those amounts are due and owing, including, but not limited to, because X Corp. is unaware of White Coat obtaining X Corp.'s written approval for the services at-issue and or obtaining X Corp.'s approval to all of White Coat's time sheets.  X Corp. lacks information or belief sufficient to answer the remaining allegations in paragraph 4 of the SAC, and on that basis, denies them.

5.     X Corp. admits that it is a party to a "Master Services Agreement" with YES, dated February 24, 2022 (the "YES MSA") and a Statement of Work No. 1 thereunder, signed by X Corp. on March 27, 2022 (the "YES SOW No. 1").  X Corp. states that the allegations in paragraph 5 of the SAC refer to the YES MSA and SOW No. 1, which speak for themselves, and X Corp. refers to those documents for a complete description of their contents.  X Corp. admits that Sec. 4.1 of the YES MSA provides that, "[i]f the Statement of Work requires Supplier to complete certain milestones, Twitter's payment obligations will be expressly subject to Supplier's completion of such milestones to Twitter's reasonable satisfaction."  The YES SOW No. 1 then provides that YES was retained to "plan, design and deliver [] leadership training and associated coaching programs for Twitter engineers, managers and directors …," and describes those services and "Deliverables" -- broken out by category, including but not limited to, live virtual training sessions, coaching sessions, and small group training -- over seven pages.  The YES SOW No. 1 also provides that "Services and/or Deliverables will be approved in writing by Twitter ('Acceptance')" (Sec. 4), that YES will be paid according to its completion of milestones set forth in SOW No. 1,

McDermott Will & Emery LLP
Attorneys at Law
Los Angeles

1  and that "[a]ll time sheets must be approved by Twitter personnel prior to payment" (Sec. 5).  X

2  Corp. admits that YES alleges it is owed approximately $49,000 under the YES MSA and SOW

3  No. 1, but X Corp. denies that those amounts are due and owing, including, but not limited to,

4  because X Corp. is unaware of YES obtaining X Corp.'s written approval for the services at-issue,

5  completing the milestones set forth in SOW No. 1 to X Corp.'s reasonable satisfaction, or obtaining

6  X Corp.'s approval to all of YES' time sheets.  X Corp. lacks information or belief sufficient to

7  answer the remaining allegations in paragraph 5 of the SAC, and on that basis, denies them.

8        6.     X Corp. admits that it is a party to an "Public Relations Services Agreement" with

9  Autumn Communications, dated September 23, 2022 (the "Autumn Communications PRSA") and

10  a Public Relations Statement of Work No. 1 thereunder, dated September 29, 2023 (the "Autumn

11  Communications PR SOW No. 1").  X Corp. states that the allegations in paragraph 6 of the SAC

12  refer to the Autumn Communications PRSA and PR SOW No. 1, which speak for themselves, and

13  X Corp. refers to those documents for a complete description of their contents.  X Corp. admits that

14  Sec. 2.c of the Autumn Communications PRSA provides that, "[i]f the SOW requires Agency to

15  complete certain milestones, Company's payment obligations will be expressly subject to Agency's

16  completion of such milestones to Company's reasonable satisfaction."  The Autumn

17  Communications PR SOW No. 1 then provides that Autumn Communications was retained to

18  "serve as a public relations agency for Twitter's global communication organization," and

19  describes a variety of those services and "Deliverables" -- broken out by category, including but not

20  limited to, account management, monitoring, research, and reporting, media relations, and thought

21  leadership and executive positioning -- over two pages.  The Autumn Communications PR SOW

22  No. 1 also provides that "Services and/or Deliverables are subject to Company's prior written

23  approval ('Acceptance')" (Sec. 5), Autumn Communications will be paid according to its

24  completion of milestones set forth in PR SOW No. 1, and that "[a]ll time sheets must be approved

25  by Company personnel prior to payment" (Sec. 6).  X Corp. admits that Autumn Communications

26  alleges it is owed approximately $60,000 under the Autumn Communications PRSA and PR SOW

27  No. 1, but X Corp. denies that those amounts are due and owing, including, but not limited to,

28

- 4 -

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

because X Corp. is unaware of Autumn Communications completing the milestones set forth in SOW No. 1 to X Corp.'s reasonable satisfaction, obtaining X Corp.'s written approval for the services at-issue, or obtaining X Corp.'s approval to all of Autumn Communications' time sheets. X Corp. lacks information or belief sufficient to answer the remaining allegations in paragraph 6 of the SAC, and on that basis, denies them.

7.      X Corp. admits that it is a party to a "Master Services Agreement" with Business Training, dated January 12, 2021 (the "Business Training MSA") and a Statement of Work No. 3 thereunder, signed by X Corp. on March 20, 2022 (the "Business Training SOW No. 3"). X Corp. states that the allegations in paragraph 7 of the SAC refer to the Business Training MSA and SOW No. 3, which speak for themselves, and X Corp. refers to those documents for a complete description of their contents. X Corp. admits that Sec. 4.1 of the Business Training MSA provides that, "[i]f the Statement of Work requires Supplier to complete certain milestones, Twitter's payment obligations will be expressly subject to Supplier's completion of such milestones to Twitter's reasonable satisfaction." The Business Training SOW No. 3 then provides that Business Training was retained to "deliver four instances of a three-part (six-hour total) interactive narrative writing training workshop," and describes those services and "Deliverables" over one page. The Business Training SOW No. 3 also provides that "Services and/or Deliverables will be approved in writing by Twitter ('Acceptance')" (Sec. 4), that Business Training will invoice X Corp. upon the completion of each scheduled workshop, that "total fees billed to Twitter will not exceed $24,000 without Twitter's prior written approval," and that "[a]ll time sheets must be approved by Twitter personnel prior to payment" (Sec. 5). X Corp. admits that Business Training alleges it is owed approximately $30,000 under the Business Training MSA and SOW No. 3, but X Corp. denies that those amounts are due and owing, including, but not limited to, because X Corp. is unaware of Business Training obtaining X Corp.'s written approval for the services at-issue, obtaining X Corp.'s written approval to exceed billings of $24,000, or obtaining X Corp.'s approval to all of Business Training's time sheets. X Corp. lacks information or belief sufficient to answer the remaining allegations in paragraph 7 of the SAC, and on that basis, denies them.

- 5 -

8.      X Corp. admits that it is a party to a "Master Services Agreement" with Measuring Usability, dated May 23, 2022 (the "Measuring Usability MSA") and a Statement of Work No. 1 thereunder, signed by X Corp. on June 13, 2022 (the "Measuring Usability SOW No. 1"). X Corp. states that the allegations in paragraph 8 of the SAC refer to the Measuring Usability MSA and SOW No. 1, which speak for themselves, and X Corp. refers to those documents for a complete description of their contents. X Corp. admits that Sec. 4.1 of the Measuring Usability MSA provides that, "[i]f the Statement of Work requires Supplier to complete certain milestones, Twitter's payment obligations will be expressly subject to Supplier's completion of such milestones to Twitter's reasonable satisfaction." Measuring Usability SOW No. 1 then provides that Measuring Usability was retained to "conduct a UX [user experience] Benchmark of the Twitter app in order to do a comprehensive evaluation of the experience of features that new users engage with," and describes those services and "Deliverables" over one page. The Measuring Usability SOW No. 1 also provides that "Services and/or Deliverables will be approved in writing by Twitter ('Acceptance')" (Sec. 4), that Measuring Usability will be paid according to its completion of milestones set forth in SOW No. 1, and that "[a]ll time sheets must be approved by Twitter personnel prior to payment" (Sec. 5). X Corp. admits that Measuring Usability alleges it is owed approximately $34,000 under the Measuring Usability MSA and SOW No. 1, but X Corp. denies that those amounts are due and owing, including, but not limited to, because X Corp. is unaware of Measuring Usability completing the milestones set forth in SOW No. 1 to X Corp.'s reasonable satisfaction, obtaining X Corp.'s written approval for the services at-issue, or obtaining X Corp.'s approval to all of Measuring Usability's time sheets. X Corp. lacks information or belief sufficient to answer the remaining allegations in paragraph 8 of the SAC, and on that basis, denies them.

9.      X Corp. admits that it is a party to a "Master Services Agreement" with Foster & Forge,[1] dated October 8, 2019 (the "Foster & Forge MSA"), a Statement of Work No. 5 thereunder, signed by X Corp. on March 7, 2022 (the "Foster & Forge SOW No. 5"), and a Statement of Work No. 6 thereunder, signed by X Corp. on July 8, 2022 (the "Foster & Forge SOW No. 6"). X Corp.

---

[1] The Foster & Forge MSA is entered into with "UCPS Learning Ltd," which X Corp. understands is the predecessor in interest to Foster & Forge.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

states that the allegations in paragraph 9 of the SAC refer to the Foster & Forge MSA, SOW No. 5, and SOW No. 6, which speak for themselves, and X Corp. refers to those documents for a complete description of their contents.  X Corp. admits that Sec. 4.1 of the Foster & Forge MSA provides that, "[i]f the Statement of Work requires Supplier to complete certain milestones, Twitter's payment obligations will be expressly subject to Supplier's completion of such milestones to Twitter's reasonable satisfaction."  The Foster & Forge SOW Nos. 5 and 6 then provide that Foster & Forge was retained to provide development, creation, and maintenance services for eLearning tools involving at least ten (10) languages, and describes those services and "Deliverables" across five pages.  Foster & Forge SOW Nos. 5 and 6 also provide that "Services and/or Deliverables will be approved in writing by Twitter ('Acceptance')" (Sec. 6), that that Foster & Forge will be paid according to its completion of specified categories of work at rates set forth in SOW No. 5, that for work described in SOW No. 5 any "[c]hanges scoped at greater than the not to exceed amount … must be submitted in advance and agreed to in writing with Twitter," that invoices shall be sent to X Corp. only "upon … Twitter's Acceptance of each Twitter-requested Activity" (Sec. 7), and that Foster & Forge will be paid "upon completion and Twitter's Acceptance of each milestone" set forth in SOW No. 6 (Sec. 7).  X Corp. admits that Foster & Forge alleges it is owed approximately $34,000 under the Foster & Forge MSA and SOW Nos. 5 and 6, but X Corp. denies that those amounts are due and owing, including, but not limited to, because X Corp. is unaware of Foster & Forge obtaining X Corp.'s written approval for the services at-issue, obtaining X Corp.'s approval to changes for categories of work and rates under SOW No. 5, or completing the milestones set forth in SOW No. 6 and obtaining X Corp.'s Acceptance thereto.  X Corp. lacks information or belief sufficient to answer the remaining allegations in paragraph 9 of the SAC, and on that basis, denies them.

10.     Paragraph 10 contains Plaintiffs' characterization of their purported "concerns," and does not set forth a claim for relief or aver facts in support of a claim to which a response is required.  To the extent that a response is required, and given the lack of particularized scope of the allegations in Paragraph 10 of the SAC, X Corp. lacks information or belief to answer those

McDermott Will & Emery LLP
Attorneys at Law
Los Angeles

allegations and, on that basis, denies them.

11.    X Corp. admits that Plaintiffs filed the SAC on behalf of themselves and a putative class defined on page 13 of the SAC.  X Corp. denies that any class can be certified in this proceeding.  X Corp. denies all remaining allegations, whether express or implied, in paragraph 11 of the SAC.

**II.    PARTIES**

12.    X Corp. lacks information or belief sufficient to answer the allegations in paragraph 12 of the SAC, and, on that basis, denies them.

13.    X Corp. lacks information or belief sufficient to answer the allegations in paragraph 13 of the SAC, and, on that basis, denies them.

14.    X Corp. lacks information or belief sufficient to answer the allegations in paragraph 14 of the SAC, and, on that basis, denies them.

15.    X Corp. lacks information or belief sufficient to answer the allegations in paragraph 15 of the SAC, and, on that basis, denies them.

16.    X Corp. lacks information or belief sufficient to answer the allegations in paragraph 16 of the SAC, and, on that basis, denies them.

17.    X Corp. lacks information or belief sufficient to answer the allegations in paragraph 17 of the SAC, and, on that basis, denies them.

18.    X Corp. admits that Plaintiffs filed the SAC on behalf of themselves and a putative class defined on page 13 of the SAC.  X Corp. denies that any class can be certified in this proceeding.  X Corp. denies all remaining allegations, whether express or implied, in paragraph 18 of the SAC.

19.    X Corp. admits that it is successor in interest to Twitter, Inc., and is incorporated under the laws of the State of Nevada with headquarters in San Francisco, California.  X Corp. further admits that Twitter, Inc. was merged into and with X Corp., effective March 15, 2023, and that Twitter, Inc. no longer exists.  X Corp. denies all remaining allegations, whether express or implied, in paragraph 19 of the SAC.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

McDermott Will & Emery LLP
Attorneys at Law
Los Angeles

III.    **JURISDICTION**

20.    X Corp. admits the Court has diversity jurisdiction over this proceeding.  X Corp. denies all remaining allegations, whether express or implied, in paragraph 20 of the SAC.

21.    X Corp. admits the Court has personal jurisdiction over it for this case because X Corp. conducts business and is headquartered in San Francisco.  X Corp. denies all remaining allegations, whether express or implied, in paragraph 21 of the SAC.

IV.    **FACTUAL ALLEGATIONS**

22.    Paragraph 22 of the SAC contains Plaintiffs' characterizations of personnel matters and post-acquisition operations at X Corp., and does not set forth a claim for relief or aver facts in support of a claim to which a response is required.  To the extent that a response is required, X Corp. admits that it has experienced reductions in force and resignations in its workforce since the time the acquisition was concluded on October 27, 2022.  X Corp. further admits that it is working with some vendors and landlords to review existing contracts, and that it is a party to various litigations involving breach of contract claims.  X Corp. denies all remaining allegations, whether express or implied, in paragraph 22 of the SAC.

23.    X Corp. admits that Plaintiffs allege that they are owed payment from X Corp. for separate and distinct services they each claim to have provided.  X Corp., however, denies that Plaintiffs are owed the amounts sought, because X Corp. is unaware of Plaintiffs having satisfied the relevant terms of their respective agreements with X Corp., as described above in paragraphs 4 through 9.

24.    X Corp. admits that it and White Coat are parties to the White Coat ICA.  X Corp. denies all remaining allegations, whether express or implied, in paragraph 24 of the SAC.

25.    X Corp. admits that it and White Coat are parties to the White Coat SOW No. 3.  X Corp. states that the remaining allegations in paragraph 25 of the SAC refer to the White Coat SOW No. 3, which speaks for itself, and X Corp. refers to that document for a complete description of its content.  X Corp. denies the allegations in paragraph 25 to the extent they do not fully and accurately reflect the same.

26.     X Corp. states that the allegations in paragraph 26 of the SAC refer to the White Coat SOW No. 3, which speaks for itself, and X Corp. refers to that document for a complete description of its content.  X Corp. denies the allegations in paragraph 26 to the extent they do not fully and accurately reflect the same.

27.     X Corp. states that the allegations in paragraph 27 of the SAC refer to the White Coat SOW No. 3, which speaks for itself, and X Corp. refers to that document for a complete description of its content.  X Corp. denies the allegations in paragraph 27 to the extent they do not fully and accurately reflect the same.  X Corp. lacks information or belief sufficient to answer the remaining allegations in paragraph 27 of the SAC, and on that basis, denies them.

28.     X Corp. denies the allegations in paragraph 28 of the SAC.

29.     X Corp. admits that the White Coat SOW No. 3 provides that, "Services and/or Deliverables will be approved in writing by Twitter ('Acceptance')" (Sec. 4), and that "[a]ll time sheets must be approved by Twitter personnel prior to payment" (Sec. 5).  X Corp. further admits that the White Coat SOW No. 3 also states that "[p]ayments are due net 45 days from receipt of an approved invoice."  X Corp. denies all remaining allegations, whether express or implied, in paragraph 29 of the SAC.

30.     X Corp. lacks information or belief sufficient to answer the remaining allegations in paragraph 30 of the SAC, and on that basis, denies them.

31.     X Corp. lacks information or belief sufficient to answer the remaining allegations in paragraph 31 of the SAC, and on that basis, denies them.

32.     X Corp. admits that White Coat alleges it is owed approximately $42,000 under the White Coat ICA and SOW No. 3, but X Corp. denies that those amounts are due and owing, including, but not limited to, because X Corp. is unaware of White Coat obtaining X Corp.'s written approval for the services at-issue and or obtaining X Corp.'s approval to all of White Coat's time sheets, as described above in paragraph 4.  X Corp. denies all remaining allegations, whether express or implied, in paragraph 32 of the SAC.

33.     X Corp. admits that it and YES are parties to the YES MSA.  X Corp. denies that the

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

YES MSA states it is effective February 23, 2024.  The first paragraph of the YES MSA provides that it is "entered into as of February 24, 2022."  X Corp. denies all remaining allegations, whether express or implied, in paragraph 33 of the SAC.

34.     X Corp. admits that it and YES are parties to the YES SOW No. 1.  X Corp. states that the remaining allegations in paragraph 34 of the SAC refer to the YES SOW No. 1, which speaks for itself, and X Corp. refers to that document for a complete description of its content.  X Corp. denies the allegations in paragraph 34 to the extent they do not fully and accurately reflect the same.

35.     X Corp. states that the allegations in paragraph 35 of the SAC refer to the YES SOW No. 1, which speaks for itself, and X Corp. refers to that document for a complete description of its content.  X Corp. denies the allegations in paragraph 35 to the extent they do not fully and accurately reflect the same.

36.     X Corp. denies the allegations in paragraph 36 of the SAC.

37.     X Corp. admits that Sec. 4.1 of the YES MSA provides that, "[i]f the Statement of Work requires Supplier to complete certain milestones, Twitter's payment obligations will be expressly subject to Supplier's completion of such milestones to Twitter's reasonable satisfaction."  The YES SOW No. 1 then provides that "Services and/or Deliverables will be approved in writing by Twitter ('Acceptance')" (Sec. 4), that YES will be paid according to its completion of milestones set forth in SOW No. 1, and that "[a]ll time sheets must be approved by Twitter personnel prior to payment" (Sec. 5).  X Corp. further admits that the YES SOW No. 1 also states that "[p]ayments are due net 60 days from receipt of an approved invoice."  X Corp. denies all remaining allegations, whether express or implied, in paragraph 37 of the SAC.

38.     X Corp. admits that YES alleges it is owed approximately $49,000 under the YES MSA and SOW No. 1, but X Corp. denies that those amounts are due and owing, including, but not limited to, because X Corp. is unaware of YES completing the milestones set forth in SOW No. 1 to X Corp.'s reasonable satisfaction, obtaining X Corp.'s written approval for the services at-issue, or obtaining X Corp.'s approval to all of YES' time sheets, as set forth in paragraph 5 above.  X

McDermott Will & Emery LLP
Attorneys at Law
Los Angeles

1    Corp. lacks information or belief sufficient to answer the remaining allegations in paragraph 38 of

2    the SAC, and on that basis, denies them.

3    39.    X Corp. denies the allegations in paragraph 39 of the SAC.

4    40.    X Corp. admits that it and Autumn Communications are parties to the Autumn

5    Communications PRSA.  X Corp. denies all remaining allegations, whether express or implied, in

6    paragraph 40 of the SAC.

7    41.    X Corp. admits that it and Autumn Communications are parties to the Autumn

8    Communications PR SOW No. 1.  X Corp. states that the remaining allegations in paragraph 41 of

9    the SAC refer to the Autumn Communications PR SOW No. 1, which speaks for itself, and X

10   Corp. refers to that document for a complete description of its content.  X Corp. denies the

11   allegations in paragraph 41 to the extent they do not fully and accurately reflect the same.

12   42.    X Corp. states that the allegations in paragraph 42 of the SAC refer to the Autumn

13   Communications PR SOW No. 1, which speaks for itself, and X Corp. refers to that document for a

14   complete description of its content.  X Corp. denies the allegations in paragraph 42 to the extent

15   they do not fully and accurately reflect the same.

16   43.    X Corp. denies the allegations in paragraph 43 of the SAC.

17   44.    X Corp. admits that Sec. 2.c of the Autumn Communications PRSA provides that,

18   "[i]f the SOW requires Agency to complete certain milestones, Company's payment obligations

19   will be expressly subject to Agency's completion of such milestones to Company's reasonable

20   satisfaction."  The Autumn Communications PR SOW No. 1 then provides that "Services and/or

21   Deliverables are subject to Company's prior written approval ('Acceptance')" (Sec. 5), Autumn

22   Communications will be paid according to its completion of milestones set forth in PR SOW No. 1,

23   and that "[a]ll time sheets must be approved by Company personnel prior to payment" (Sec. 6).  X

24   Corp. further admits that the Autumn Communications PR SOW No. 1 also states that "[p]ayments

25   are due net 45 days from permitted invoice date."  X Corp. denies all remaining allegations,

26   whether express or implied, in paragraph 44 of the SAC.

27   45.    X Corp. admits that Autumn Communications alleges it is owed approximately

28

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

$60,000 under the Autumn Communications PRSA and PR SOW No. 1, but X Corp. denies that those amounts are due and owing, including, but not limited to, because X Corp. is unaware of Autumn Communications completing the milestones set forth in SOW No. 1 to X Corp.'s reasonable satisfaction, obtaining X Corp.'s written approval for the services at-issue, or obtaining X Corp.'s approval to all of Autumn Communications' time sheets, as set forth in paragraph 6 above.  X Corp. lacks information or belief sufficient to answer the remaining allegations in paragraph 45 of the SAC, and on that basis, denies them.

46.     X Corp. denies the allegations in paragraph 46 of the SAC.

47.     X Corp. admits that it and Business Training are parties to the Business Training MSA.  X Corp. denies all remaining allegations, whether express or implied, in paragraph 47 of the SAC.

48.     X Corp. admits that it and Business Training are parties to the Business Training SOW No. 3.  X Corp. states that the remaining allegations in paragraph 48 of the SAC refer to the Business Training SOW No. 3, which speaks for itself, and X Corp. refers to that document for a complete description of its content.  X Corp. denies the allegations in paragraph 48 to the extent they do not fully and accurately reflect the same.

49.     X Corp. states that the allegations in paragraph 48 of the SAC refer to the Business Training SOW No. 3, which speaks for itself, and X Corp. refers to that document for a complete description of its content.  X Corp. denies the allegations in paragraph 48 to the extent they do not fully and accurately reflect the same.

50.     X Corp. denies the allegations in paragraph 50 of the SAC.

51.     X Corp. admits that Sec. 4.1 of the Business Training MSA provides that, "[i]f the Statement of Work requires Supplier to complete certain milestones, Twitter's payment obligations will be expressly subject to Supplier's completion of such milestones to Twitter's reasonable satisfaction."  The Business Training SOW No. 3 then provides that "Services and/or Deliverables will be approved in writing by Twitter ('Acceptance')" (Sec. 4), that Business Training will invoice X Corp. upon the completion of each scheduled workshop, that "total fees billed to Twitter will not

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

exceed $24,000 without Twitter's prior written approval," and that "[a]ll time sheets must be approved by Twitter personnel prior to payment" (Sec. 5).  X Corp. further admits that the Business Training SOW No. 3 also states that "[p]ayments are due net 60 days from receipt of an approved invoice."  X Corp. denies all remaining allegations, whether express or implied, in paragraph 51 of the SAC.

52.     X Corp. admits that Business Training alleges it is owed approximately $30,000 under the Business Training MSA and SOW No. 3, but X Corp. denies that those amounts are due and owing, including, but not limited to, because X Corp. is unaware of Business Training obtaining X Corp.'s written approval for the services at-issue, obtaining X Corp.'s written approval to exceed billings of $24,000, or obtaining X Corp.'s approval to all of Business Training's time sheets, as set forth in paragraph 7 above.  X Corp. lacks information or belief sufficient to answer the remaining allegations in paragraph 52 of the SAC, and on that basis, denies them.

53.     X Corp. denies the allegations in paragraph 53 of the SAC.

54.     X Corp. admits that it and Measuring Usability are parties to the Measuring Usability MSA.  X Corp. denies all remaining allegations, whether express or implied, in paragraph 54 of the SAC.

55.     X Corp. admits that it and Measuring Usability are parties to the Measuring Usability SOW No. 1.  X Corp. states that the remaining allegations in paragraph 55 of the SAC refer to the Measuring Usability SOW No. 1, which speaks for itself, and X Corp. refers to that document for a complete description of its content.  X Corp. denies the allegations in paragraph 55 to the extent they do not fully and accurately reflect the same.

56.     X Corp. states that the allegations in paragraph 56 of the SAC refer to the Measuring Usability SOW No. 1, which speaks for itself, and X Corp. refers to that document for a complete description of its content.  X Corp. denies the allegations in paragraph 56 to the extent they do not fully and accurately reflect the same.

57.     X Corp. denies the allegations in paragraph 57 of the SAC.

58.     X Corp. admits that Sec. 4.1 of the Measuring Usability MSA provides that, "[i]f the

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

Statement of Work requires Supplier to complete certain milestones, Twitter's payment obligations will be expressly subject to Supplier's completion of such milestones to Twitter's reasonable satisfaction." The Measuring Usability SOW No. 1 then provides that "Services and/or Deliverables will be approved in writing by Twitter ('Acceptance')" (Sec. 4), that that Measuring Usability will be paid according to its completion of milestones set forth in SOW No. 1, and that "[a]ll time sheets must be approved by Twitter personnel prior to payment" (Sec. 5). X Corp. further admits that the Measuring Usability SOW No. 1 also states that "[p]ayments are due net 60 days from receipt of an approved invoice." X Corp. denies all remaining allegations, whether express or implied, in paragraph 58 of the SAC.

59. X Corp. admits that Measuring Usability alleges it is owed approximately $34,000 under the Measuring Usability MSA and SOW No. 1, but X Corp. denies that those amounts are due and owing, including, but not limited to, because X Corp. is unaware of Measuring Usability completing the milestones set forth in SOW No. 1 to X Corp.'s reasonable satisfaction, obtaining X Corp.'s written approval for the services at-issue, or obtaining X Corp.'s approval to all of Measuring Usability's time sheets, for the reasons set forth in paragraph 8 above. X Corp. lacks information or belief sufficient to answer the remaining allegations in paragraph 59 of the SAC, and on that basis, denies them.

60. X Corp. denies the allegations in paragraph 60 of the SAC.

61. X Corp. admits that it and Foster & Forge are parties to the Foster & Forge MSA. X Corp. admits that X Corp. and Foster & Forge entered into Amendment No. 3 to the Master Services Agreement on February 7, 2022. X Corp. denies all remaining allegations, whether express or implied, in paragraph 61 of the SAC.

62. X Corp. admits that it and Foster & Forge are parties to the Foster & Forge SOW Nos. 5 and 6. X Corp. states that the remaining allegations in paragraph 62 of the SAC refer to the Foster & Forge SOW Nos. 5 and 6, which speak for themselves, and X Corp. refers to those documents for a complete description of their contents. X Corp. denies the allegations in paragraph 62 to the extent they do not fully and accurately reflect the same.

63.     X Corp. states that the allegations in paragraph 62 of the SAC refer to the Foster & Forge SOW Nos. 5 and 6, which speak for themselves, and X Corp. refers to those documents for a complete description of their contents.  X Corp. denies the allegations in paragraph 62 to the extent they do not fully and accurately reflect the same.

64.     X Corp. denies the allegations in paragraph 64 of the SAC.

65.     X Corp. admits that Sec. 4.1 of the Foster & Forge MSA provides that, "[i]f the Statement of Work requires Supplier to complete certain milestones, Twitter's payment obligations will be expressly subject to Supplier's completion of such milestones to Twitter's reasonable satisfaction."  Foster & Forge SOW Nos. 5 and 6 then provide that "Services and/or Deliverables will be approved in writing by Twitter ('Acceptance')" (Sec. 6), that that Foster & Forge will be paid according to its completion of specified categories of work at rates set forth in SOW No. 5, that for work described in SOW No. 5 any "[c]hanges scoped at greater than the not to exceed amount … must be submitted in advance and agreed to in writing with Twitter," and that invoices shall be sent to X Corp. only "upon … Twitter's Acceptance of each Twitter-requested Activity" (Sec. 7), and that Foster & Forge will be paid "upon completion and Twitter's Acceptance of each milestone" set forth in SOW No. 6 (Sec. 7).  X Corp. admits that Foster & Forge SOW Nos. 5 and 6 also both provides that, "[p]ayments are due net 30 days from permitted invoice date."  X Corp. denies the allegations in paragraph 65 to the extent they do not fully and accurately reflect the same.

66.     X Corp. admits that Foster & Forge alleges it is owed approximately $34,000 under the Foster & Forge MSA and SOW Nos. 5 and 6, but X Corp. denies that those amounts are due and owing, including, but not limited to, because X Corp. is unaware of Foster & Forge obtaining X Corp.'s written approval for the services at-issue, obtaining X Corp.'s approval to changes for categories of work and rates under SOW No. 5, or completing the milestones set forth in SOW No. 6 and obtaining X Corp.'s Acceptance thereto, as set forth in paragraph 9 above.  X Corp. lacks information or belief sufficient to answer the remaining allegations in paragraph 66 of the SAC, and on that basis, denies them.

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

McDermott Will & Emery LLP
Attorneys at Law
Los Angeles

67.    X Corp. denies the allegations in paragraph 67 of the SAC.

68.    X Corp. lacks information or belief sufficient to answer the allegations in paragraph 68 of the SAC, and, on that basis, denies them.

69.    X Corp. lacks information or belief sufficient to answer the allegations in paragraph 69 of the SAC, and, on that basis, denies them.

70.    X Corp. admits that the Business Insider article cited by Plaintiffs in paragraph 70 of the SAC states that, according to a separate report in the Financial Times, "Elon Musk has repeatedly said 'let them sue,' as unpaid bills for Twitter's vendors have piled up since his takeover." X Corp. denies all remaining allegations, whether express or implied, in paragraph 70 of the SAC.

71.    X Corp. admits that Plaintiffs filed the SAC on behalf of themselves and a putative class defined on page 13 of the SAC. X Corp. denies that any class can be certified in this proceeding. X Corp. denies all remaining allegations in paragraph 71 of the SAC.

<u>**COUNT I**</u>

**Breach of Contract**

72.    X Corp. incorporates by reference paragraphs 1 through 71, inclusive, as if set forth fully herein.

73.    X Corp. admits that it entered into the agreements with Plaintiffs as described in paragraphs 4 through 9 above. Given the lack of particularized scope of the remaining allegations in paragraph 73 of the SAC, X Corp. lacks information or belief sufficient to answer those allegations and, on that basis, denies them.

74.    X Corp. denies the allegations in paragraph 74 of the SAC.

75.    X Corp. denies the allegations in paragraph 75 of the SAC.

76.    X Corp. denies the allegations in paragraph 76 of the SAC.

<u>**COUNT II**</u>

**Quantum Meruit**

77.    X Corp. incorporates by reference paragraphs 1 through 71, inclusive, as if set forth

fully herein.

78.     X Corp. denies that Plaintiffs have fully performed all of their obligations under the agreements with X Corp. described in paragraphs 4 through 9 above.  Given the lack of particularized scope of the remaining allegations in paragraph 73 of the SAC, X Corp. lacks information or belief sufficient to answer those allegations and, on that basis, denies them.

79.     X Corp. denies that Plaintiffs are entitled to the amounts prayed for in the SAC. Given the lack of particularized scope of the remaining allegations in paragraph 79 of the SAC, X Corp. lacks information or belief sufficient to answer those allegations and, on that basis, denies them.

80.     X Corp. denies the allegations in paragraph 80 of the SAC.

<u>**COUNT III**</u>

**Account Stated**

81.     X Corp. incorporates by reference paragraphs 1 through 71, inclusive, as if set forth fully herein.

82.     X Corp. denies that Plaintiffs are entitled to the amounts prayed for in the SAC. Given the lack of particularized scope of the remaining allegations in paragraph 82 of the SAC, X Corp. lacks information or belief sufficient to answer those allegations and, on that basis, denies them.

83.     X Corp. denies the allegations in paragraph 83 of the SAC.

<u>**COUNT IV**</u>

**Open Book Account**

84.     X Corp. incorporates by reference paragraphs 1 through 71, inclusive, as if set forth fully herein.

85.     X Corp. denies that Plaintiffs are entitled to the amounts prayed for in the SAC. Given the lack of particularized scope of the remaining allegations in paragraph 82 of the SAC, X Corp. lacks information or belief sufficient to answer those allegations and, on that basis, denies them.

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

McDermott Will & Emery LLP
Attorneys at Law
Los Angeles

86.    X Corp. denies the allegations in paragraph 86 of the SAC.

## PRAYER FOR RELIEF / JURY DEMAND

X Corp. denies that Plaintiffs and the putative class are entitled to any relief.

## AFFIRMATIVE DEFENSES

X Corp. alleges the following separate and additional defenses and objections.  By pleading these objections, X Corp. does not, in any way, agree or concede it has the burden of proof or persuasion on any of these issues.  X Corp. reserves the right to assert additional defenses and objections in the event discovery or further investigation demonstrates any such defenses or objections are appropriate or applicable.

## FIRST AFFIRMATIVE DEFENSE

### (Failure to State a Claim)

The SAC fails to allege facts sufficient to state any claim against X Corp.

## SECOND AFFIRMATIVE DEFENSE

### (Performance)

X Corp. has performed and satisfied each and every obligation imposed on it, if any, by agreement and by law.

## THIRD AFFIRMATIVE DEFENSE

### (Good Faith)

X Corp. acted at all times in good faith with respect to all contract actions regarding Plaintiffs.

## FOURTH AFFIRMATIVE DEFENSE

### (Breach of Contract)

Plaintiffs breached the operative and relevant written agreements they entered into with X Corp. and, as such, X Corp. is excused from performing all of its obligations set forth in those contracts and Plaintiffs are barred from obtaining any relief under them.

McDermott Will & Emery LLP
ATTORNEYS AT LAW
LOS ANGELES

**FIFTH AFFIRMATIVE DEFENSE**

**(No Legal / Contractual Violations By X Corp.)**

X Corp. did not violate any express, implied and/or ostensible duties, obligations, and/or responsibilities owing to Plaintiffs.

**SIXTH AFFIRMATIVE DEFENSE**

**(Estoppel and Waiver)**

The claims in the SAC are barred by the doctrines of estoppel and/or waiver.

**SEVENTH AFFIRMATIVE DEFENSE**

**(Unclean Hands)**

Plaintiffs are barred by the doctrine of unclean hands from asserting the claims in the SAC.

**EIGHTH AFFIRMATIVE DEFENSE**

**(Failure to Mitigate Damages)**

Plaintiffs' claims are barred, in whole or in part, as a result of their failure to mitigate their alleged damages, if any.

**NINTH AFFIRMATIVE DEFENSE**

**(Contributing Act)**

Plaintiffs have suffered no damage or injury as a direct or proximate result of X Corp.'s actions alleged in the SAC.

**TENTH AFFIRMATIVE DEFENSE**

**(Improper Class Action)**

Plaintiffs cannot satisfy the prerequisites set forth in Federal Rule of Civil Procedure 23 to maintain a class action.

**PRAYER FOR RELIEF**

WHEREFORE, X Corp. prays for judgment as follows:

A.      Plaintiffs take nothing by the SAC, and the court enters judgment against Plaintiffs and in favor of X Corp.;

- 20 -

B.    The court awards X Corp. its costs of suit; and

C.    Such other and further relief as this court deems just and proper.

### **JURY DEMAND**

X Corp. hereby demands a jury trial as provided by Federal Rule of Civil Procedure 38, as to all issues or claims for which a jury trial is allowed.


Dated: December 1, 2023                    **McDERMOTT WILL & EMERY LLP**

                                           By: _____
                                               JONATHAN HAWK
                                               Attorneys for Defendant X CORP.